REGAN, Judge.
Plaintiff, Housecraft Division of the Southern Siding Company,[1] instituted this suit against the defendants, Peter and Evelyn Tatum, endeavoring to recover the sum of $1,500, representing the unpaid contract price due by defendants for the renovation of their home by adding a “made brick” exterior thereto. Plaintiff further prayed' for 20% attorney’s fees on this amount, which is provided for in the contract in the event either party thereto should default, and the recognition of a duly recorded lien against defendants’ residence at 1632 Pace Street in the City of New Orleans.
Defendants answered and admitted entering into the contract; however, they asserted that plaintiff promised to cover the exterior of their home with a steel reinforced brick, but instead, covered the exterior thereof with stucco and scored impressions thereon so as to simulate brick, which developed numerous cracks shortly after the job was completed. Then, by virtue of a reconventional demand, they asserted that the plaintiff was indebted to them in the amount of $1,500, the -sum it would cost to restore their home to its former condition.
*526 From a judgment[2] dismissing both the principal and reconventional demands, plaintiff has appealed. Defendants answered the appeal, praying for a judgment of $1,500 on the reconventional demand.
The facts, as revealed by the record, which provoked this litigation, are as follows:
On August 4, 1958, plaintiff, through its agent, James- Patton, and the defendants entered into a contract, the pertinent part of which reads:
“Brick complete house with made brick steel reinforced. Use wood molds around each opening. Use foil & steel behind material.”
Immediately thereafter, plaintiff’s employees began this work on the defendants’ residence. Initially they repaired and replaced weatherboards where necessary; secondly, they covered the exterior with aluminum foil and then nailed steel mesh thereto. Then they applied a coat of masonry mortar over the entire surface and when it dried, they applied a second coat of the same material. Finally, they applied a masonry material which was the color the surface'was to.be. While the final coat was drying, workmen scored the surface. Scoring iá a process of making impressions in the mortar for the purpose of having the surface thereof simulate brick.
The disputed facts concern the pre-con-tract negotiations with respect to the rep-sentations made by plaintiff’s agent when the contract was -signed, the actions of defendants during the performance of the work and the quality of the work once the job was completed.
Patton, appearing on plaintiff’s behalf, testified that he told the defendants precisely how the exterior of their home would be renovated. He also told them the location of a home where his company had recently completed a similar job and invited the defendants to inspect it. After casually viewing the house designated, Patton said, both defendants said they liked its appearance and signed the contract immediately thereafter. Patton said that Mrs. Tatum even saw the “made brick” being applied and never complained. She was consulted about selecting the surface color, he recounted, and agreed to the use of a batch of mortar which plaintiff’s employees had already mixed and colored.
Plaintiff called two experts to testify concerning the quality of the job performed, both of whom were familiar with the process used in applying “made brick” siding. Herman Abry, president of Bondstone of New Orleans, Inc., and Julian J. Loeb, president of National Roofing and Siding Company, both inspected the house and testified that the job, in their opinions, was excellent. Both experts did note, however, that there were several minor cracks in the surface.
Defendant Tatum then testified that he was led to believe that the plaintiff would cover the exterior surface of his house with a cubical-shaped, steel reinforced brick, which measured between and 2 inches wide. He stated that a sample of the material which was shown to him and which was to be used in performing the job was in the shape of a block brick, and he even stated to Patton at that time that he did not want siding or stucco on his home. When the “stucco-like” material was being applied to his home after the contract was signed, Patton told Tatum that the mortar was a base coat and bricks were to be laid next to it. Tatum said his job required him to travel; therefore, he only saw his home three times during the course of the performance of the contract. The first time he saw the foil and mesh nailed to the exterior; next he saw the mortar being applied and was then assured that this was necessary before the bricks could be laid. Mr. Tatum described his third view of the home and his reaction thereto in this manner:
“ * * * and then the next time I seen the job he had part of that colored *527 stucco on my house — half of the front — and I called him over. I tried to get hold of a number of the Housecraft and I could not and I tried considerable times to get hold of somebody from there, and. the only person I could get there was Mr. Patton and I had to get an Act of Congress to do that, and he came over there and he said, nothing you can do about it, and that’s all there is to it; you signed a contract and there is nothing you can do about it, and I said, Mr. Patton, that is not a brick, an inch and three-quarters or two-inch chemical brick, and is nothing but stucco. * * * ”
Two pieces of the brick veneer were taken from defendants’ residence and introduced in evidence, which measure about Vá inch in width.
Mrs. Tatum corroborated her husband’s version of the pre-contract negotiations. She also assumed that block bricks were to be used because Patton promised to produce three sample block bricks that he would have made up for the purpose of selecting the color. During the course of construction, she constantly complained about the use of “stucco” and was finally told it was too late for her to do anything about it since the contract had been signed.
Thomas Goslin, an experienced brick masonry contractor, had been hired by defendants to remove the samples of brick veneer from the home. He also examined the building and noticed cracks throughout the entire surface of the veneer, which, while not very large, were plainly visible. In response to the trial judge’s questions relating to the cost of providing a real brick exterior, Goslin estimated the job could be done for $1,500.
Defendant then called Malcolm Barth, who is engaged in the business of painting and general repairing of residences, who stated that he would charge the defendants $1,500 to restore the exterior of their home to its former condition, which would entail removing the siding, filling in the nail holes in the weatherboard and repairing the surface.
To rebut this estimate for restoring defendants’ residence to its former condition, plaintiff’s president, Leo Mervis, testified that his company could do the entire job for $300.
The trial judge relied on the jury’s finding “in favor of the defendants” in dismissing plaintiff’s suit and then dismissed defendants’ reconventional demand.
Counsel for plaintiff asserts that the jury’s verdict is not responsive in that it fails to indicate whether its finding for the defendants was based upon the alleged misrepresentations by plaintiff’s agent or the performance of the contract in an un-workmanlike manner. Therefore, he argues, that the jury verdict should be overturned because the evidence fully establishes the contract and defendants’ breach thereof without just cause. Alternatively, he asserts that plaintiff is entitled to the value of the improvements if the contract is considered to be invalid' becáuse of a misrepresentation of fact.
The law is clear to the effect that a contract entered into by one of the parties through an error in motive is a nullity, when the error concerns the principal reason for entering therein.[3] This is especially true when one of the parties to the contract is responsible for creating the error.[4]
*528 It is equally well-settled that if the performance of a building contract is completed, even though there was a breach, and the value of the property is enhanced thereby, then the recipient of the improvements is liable for their value.[5]
Therefore, the first question posed for our consideration is whether the evidence supports the jury’s verdict for the defendants. It is true, as plaintiff argues, that the record fails to indicate upon which findings of fact the jury predicated its verdict; however, we think the record contains sufficient evidence to warrant a conclusion that the plaintiff’s agent misrepresented a material fact which induced defendants to enter into the contract, and further, that the work performed was worthless to defendants.
Concerning the pre-contract negotiations and misrepresentations, the trial court heard two factual versions, one given by defendants and the other by plaintiff’s agent, Patton. Obviously the trial judge and the jury accepted the defendants’ version and concluded that plaintiff’s agent represented to them that the exterior of their home would be finished with steel reinforced brick and not a simulated brick, created by scoring impressions thereof in mortar. We find nothing in the record that would warrant our disturbing this conclusion. We are also of the opinion that plaintiff’s misrepresentations continued throughout the performance of the contract until the final coat of mortar was being applied, and when defendant Tatum discovered the fraud, he was powerless to rectify the error because the entire contract was performed within a twelve-day period and his discovery was not made until the final stucco surface was being applied and the job was practically completed.
As to the value of the improvements, we believe the evidence preponderates to the effect that defendants received no value whatsoever from the completed contract. Not only did the defendants’ expert state that the scored mortar reflected numerous cracks that were plainly visible, but the plaintiff’s own two experts also conceded that the surface thereof revealed minor cracks therein within a year after the contract was completed.
Therefore, since we have concluded that the defendants received no value from plaintiff’s work, we are compelled to evaluate the merits of their reconventional demand.
Defendants assert they are entitled to a judgment for the amount it will cost to restore their home to its former condition and rely upon LSA-C.C. Article 1928, which provides:
“The obligee may require that any thing which has been done in violation of a contract may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other and may also add damages, if the justice of the case require it.”
The only evidence adduced to establish the cost of restoring the exterior of defendants’ residence to its former condition is the testimony of a general painter and repairman, who said he would do the job for $1,500. However, defendants totally failed to establish that this was a reasonable price for the restorative work. Plaintiff, to rebut this testimony, called its president, who estimated that his company could do the work for $300. Considering the work involved, it is difficult for us to accept the lower estimate, which was apparently made in an attempt to minimize damages should the defendants’ reconventional demand prevail.
*529 Therefore, in order to reach a just result, we are of the opinion that it is necessary for us to remand this aspect of the case to the trial court for the purpose of affording both litigants an opportunity to elicit testimony to establish the fair and reasonable cost of restoring defendants’ home to its former condition.
For the reasons assigned, the judgment appealed from is affirmed insofar as it dismisses plaintiff’s original demand and casts plaintiff for court costs, and it is reversed insofar as it dismisses defendants’ reconventional demand, and it is now ordered that this case be remanded to the trial court for the purpose of adducing additional testimony so as to accomplish a result not inconsistent with the views expressed herein. Appellant is to bear the costs of this appeal; all future costs to await a final determination of the matter.
Affirmed in part reversed in part and remanded.

. A partnership composed of Celia and Leo Mervis.

. The judgment is predicated upon a jury’s finding for the defendants.

. LSA-C.C. Art. 1825 — “The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made.”

. LSA-C.C. Art. 1832 — “In all cases however, when the information, which would have destroyed the error, has been withhold by the other party to the contract, it comes under the head of fraud, and invalidates the contract.”

. Ebert v. Chambers, La.App.1956, 87 So.2d 613; Leopold v. Leggio, La.App.1955, 79 So.2d 925; and Montague v. Milan, La.App.1953, 67 So.2d 351.