903 So.2d 486 (2005)
David B. KAUFMAN
v.
AUDUBON FORD/AUDUBON IMPORTS, INC.
No. 2004-CA-1540.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 2005.
*487 John H. Brooks, Gretna, LA, for Plaintiff/Appellant.
Jo Ann Lea, E. Wade Shows, Shows, Cali & Berthelot, L.L.P., Baton Rouge, LA, for Defendant/Appellee.
(Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, and Judge ROLAND L. BELSOME).
CHARLES R. JONES, Judge.
This is an appeal from a judgment in favor of the Appellee, Audubon Ford/Audubon Imports, Inc., rescinding an agreement to sell two automobiles to the Appellant, David B. Kaufman. For the following reasons, we affirm the judgment of the district court in part, and amend in part.

Facts
On or about August 28, 1997, the Appellant, David B. Kaufman, negotiated the sale of two Mercedes Benz M-Class vehicles to Mr. Veerasakdi Sukaviriya (hereinafter referred to as "Mr. Vee") of Thailand. The Appellant then contacted the Appellee, Audubon Ford/Audubon Imports, Inc. (hereinafter referred to as "Audubon"), to purchase the ML320 vehicles, and on September 2, 1997, a "Purchase and Disclaimer Contract" was completed by Carol Lynn (Doiron) Whittey (hereinafter referred to as "Whittey"), an Audubon Sales Consultant, for the purchase of one ruby 1998 Mercedes Benz ML320 automobile. A cashier's check in the amount of Five Hundred Dollars and No Cents ($500.00) was provided by the Appellant as a deposit on the vehicle.
On September 9, 1997, the Appellant provided a second cashier's check in the amount of Five Hundred Dollars and No Cents ($500.00) as a deposit on a second ML320 vehicle. Ms. Whittey completed a "Purchase and Disclaimer Contract" for the purchase of one black ML320 on September 30, 1997.
Under the terms of the sales agreement, the first vehicle (the ruby vehicle) was to be delivered on or about October 2, 1997, and the second vehicle (the black vehicle) was to be delivered between October 10 and October 15, 1997.
On October 8, 1997, the Appellant traveled to Baton Rouge to pick up the ruby ML320. During the course of the negotiation of the sale, the Appellee's general manager, Kyle Talbert (hereinafter referred to as "Talbert"), determined that the Appellant was an exporter of automobiles, and that the automobiles would likely be exported in violation of Mercedes Benz' *488 Export Agreement Policy, contrary to the Appellant's assurances that he would not export the vehicles. The record reflects that at this time, the Appellant represented to Talbert that he was not going to export the vehicles. In his deposition, the Appellant testified that at the time he negotiated the purchase of the vehicles with the Appellee, he did not intend to export the vehicles.
However, the Appellant refused to sign an "Addendum to Purchase Agreement" which provided that the Appellant would not export the vehicles or sell the vehicles to any persons for export. Upon the Appellant's refusal to sign the addendum, Talbert halted the conclusion of the sale of the ruby ML320 automobile to avoid violating the export policy and being fined by Mercedes Benz. The Appellant was then refunded the Five Hundred Dollar ($500.00) deposit for the ruby vehicle; however, he was not refunded the Five Hundred Dollar ($500.00) deposit for the black vehicle.
It is of note that the Appellant later stipulated at trial that he did intend to export the vehicles at the time of purchase despite his earlier protestations to the contrary.

Procedural History
On October 14, 1997, the Appellant filed suit for specific performance or damages for breach of contract, and for a temporary restraining order and an injunction prohibiting the Appellee from selling the ruby ML320 vehicle. The Appellee cross-filed to dissolve the temporary restraining order coupled with a request for attorney's fees and damages. On October 14, 1997, the ruby ML320 was sold for an amount less than the amount the Appellant agreed to pay and title was transferred. A temporary restraining order prohibiting the sale of the ruby ML320 was issued on October 15, 1997, and notice was provided to the Appellant's counsel at 2:05 p.m. that same day. A Preliminary Injunction was issued on October 28, 1997.
In his petition, the Appellant sought damages, lost profits, loss of reputation and attorney's fees based on the claim that the Appellee failed to perform under a contract of sale. He further sought treble damages under the Louisiana Unfair Trade Practices and Consumer Protection Act.
A trial on the merits was conducted on April 26 and 27, 2004. The district court granted judgment in favor of the Appellee, Audubon, and against the Appellant, Kaufman, dismissing all claims against Audubon with prejudice. The Appellant then filed this timely appeal.

Discussion
It is well settled that a court of appeal may not set aside a trial court's or jury's finding of fact unless it is manifestly erroneous or clearly wrong; and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, et al., 549 So.2d 840 (La.1989), citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In his first assignment of error, the Appellant argues that the district court erroneously applied the laws concerning mistake of fact to its own findings, rather than apply the law of agency. We disagree. We find no error in the finding of the district court that rescission was the proper basis of relief in the present case. We find that the district court properly applied the laws of contract to the action at hand, even though the contract was entered into by an undisclosed agent.
*489 The Appellant has sued for specific performance of a contract to sell two automobiles, and for damages as a result of Audubon's failure to perform the contract of sale. Thus, we find that the district court correctly applied the law contained in the Civil Code section "Conventional Obligations and Contracts," finding that the Appellant's concealment of his agency status vitiated the Appellant's consent to the contract.
The district court found that the concealment by the Appellant of the fact that he was an agent for Mr. Vee was sufficient to vitiate the contract for want of consent on the part of the Appellant. In her written reasons for judgment, the district court stated:
It is clear from the record that if Ms. Whittey (formerly Ms. Doiron) and Mr. Talbert had been advised at the time of the sales contract was signed that the plaintiff, Mr. Kaufman, was acting as an agent for Mr. Veerasakdi Sukaviriya, who lived in Taiwan, they would not have consented to the acceptance of plaintiff's offer to purchase the two Mercedes ML320s.
Therefore, the concealment by plaintiff of the fact that he was an agent for Mr. Sukaviriya is sufficient to vitiate the contract for want of consent on the part of defendant. La. C.C. art.1948.
In the case sub judice, we find that there never was a valid contract confected by the parties; thus, we agree that the district court correctly found that the seller in this case, the Appellee, was entitled to rescind the sale. A contract is formed by the consent of the parties established through offer and acceptance. La. Civil Code Article 1927. Accordingly, there must be a meeting of the minds.
Consent to a contract may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. art. 1949. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation. LSA-C.C. art. 1950.
Moreover, fraud sufficient to vitiate consent is described by La. C.C. art. 1953, as follows:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art.1953.
The record reflects that the Appellant stipulated at trial that at the time that he negotiated the purchase of the vehicles, his intent was to export them, to sell them to Mr. Vee who was going to take them to the Chinese market despite the fact that he testified in his deposition, and represented to the Appellee that he did not intend to export the vehicles.
Mr. Talbert testified that as manager of Audubon, he was led to believe that the vehicles being purchased by the Appellant were going to be registered in New Orleans. He further testified that had he known that the Appellant was going to export the vehicles out of the country, the Appellee never would have sold him the vehicles.
Mr. Talbert stated that the Appellant specifically denied to him that he was going to export the automobiles. However, he testified that upon the Appellant's arrival *490 at the dealership to pick up the ruby automobile, after the parties entered into the agreement to purchase the automobiles, the Appellant requested three blank certified copies of the manufacturer's certificate of origin. Mr. Talbert stated that it is unusual for a customer to want a blank manufacturer's statement of origin which allows a person to take the vehicle anywhere in the world and title it. He testified that had he known that the Appellant wanted a blank certificate of origin, he never would have entered into the contract of sale.
Ms. Whittey, a Sales Consultant of Audubon, also testified that the Appellant advised her that he was purchasing the black vehicle for his brother. She also stated that had she known that the Appellant was purchasing the vehicles for someone out of the country, she would have refused the sale. Ms. Whittey testified that the Appellant did not tell her that he intended to export the vehicles, or that he was purchasing the vehicles for someone who resided out of the country.
We find that the stipulation of the Appellant coupled with the testimony of Talbert and Whittey proved by a preponderance of the evidence that the Appellant concealed the fact that he was an agent for Mr. Vee. In fact, this does not appear to be in dispute. We further find that the identity of the purchaser of the vehicles was a material fact in obtaining the consent of the Appellee to the sale of the vehicles.
The Appellee accepted the Appellant's offer to purchase the automobiles based on the mistaken belief that the contract of sale was between Audubon, as seller, and Mr. Kaufman, as purchaser. However, the Appellant was actually purchasing the vehicles on behalf of Mr. Vee. The record is clear that had the Appellee known that Mr. Vee was the actual party to the contract, the Appellee would not have negotiated the sale, since the Appellee would not have entered into negotiations with a party who would export the vehicles in violation of the export policy.
We agree with the district court that the concealment by the Appellant of the fact that Mr. Vee was the intended purchaser and that the Appellant intended to export the vehicles was sufficient, therefore, in the case at bar, to vitiate the contract for want of consent on the part of the Appellee; thus, there is no valid contract.
In his second assignment of error, the Appellant argues that the district court erroneously applied the rules for rescission of a written agreement because the law of unilateral mistake of fact will not support nullification of a written contract, but instead there must exist mutual error in the drafting of the instrument. We disagree and find that the district court did not err in applying the rules for rescission of a written agreement because the law of unilateral mistake of fact in this case supports nullification of the contract.
Louisiana Courts have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract. Marcello v. Bussiere, 284 So.2d 892 (La.1973); Housecraft Division of the Southern Siding Co. v. Tatum, 130 So.2d 524 (La.App. 4 Cir.1961); Jefferson Truck Equipment Co. v. Guarisco Motor Co., 250 So.2d 211 (La.App. 1 Cir.1971). Moreover, Comment (d) to Louisiana Civil Code Art. 1949, states:
When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error.
*491 We find that in the instant case, the Appellant was not innocent of the error. In fact, the Appellant intentionally misrepresented that he was purchasing the automobiles for himself and that he would not export the vehicles. Thus, the record is clear that the Appellant knew that the Appellee would not sell the automobiles to someone who intended to export them. Otherwise, the Appellant would not have concealed the fact that he was purchasing the vehicles for Mr. Vee. As the district court found, this misrepresentation created the error that caused the Appellee to contract with the Appellant. We cannot say that the error was insignificant, as it induced the Appellee to enter into the agreement. Therefore, although the error was unilateral, because the Appellant knew that the mistake in identity of the true purchaser was the principal cause why the Appellee entered into the contract, the Appellee is entitled to have the contract set aside by reason of error as a vice of consent.
Furthermore, we find that the Appellee could not have easily detected that the Appellant was not purchasing the automobiles for himself prior to his arrival at the dealership to pick up the ruby vehicle, as the Appellant had intentionally misled the Appellee in previous telephone negotiations.
The Appellant argues that oral testimony should not have been considered in determining whether a valid contract exists. The Appellant contends that parol evidence concerning oral discussions of exportation of the vehicles, as well as other factors justifying suspicions that the vehicles would be exported on the part of the Appellee, such as the tags, license, tax positions, rejection of delivery, inspection certificates, and MSO, is not admissible because written contracts are subject to the Four Corners Doctrine. While the meaning and intent of the parties to a written agreement is determined from within the four corners of the document, and its terms cannot be explained or contradicted by extrinsic evidence, La. C.C. Art. 1848 recognizes an exception to this rule. La. C.C. Art. 1848 provides that parol evidence may be admitted:
... in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
Comment (b) further states: "Testimonial proof may be used against a writing to show error, fraud or duress ... and may also be admitted to show that a written contract was modified by a subsequent and valid verbal agreement." See also, Mitchell v. Clark, 448 So.2d 681 (La.1984).
The Appellee alleged that the contract was modified by the Appellant's oral representations that he would not export the vehicle. Moreover, the Appellant alleged error and fraud as vices of consent. Thus, we agree that the district court did not err in allowing the admission of parol evidence, as these fall within the exception of La. C.C. art. 1848.
While the Appellant has not specifically assigned the issues of Unfair Trade Practices and Treble Damages as errors for consideration by this Court, but has discussed these issues in his appeal, we will address these issues in the interest of judicial economy.
The Appellant contends that the Appellee's "non-export rule" violates the Unfair Trade Practices Act, and that he is therefore entitled to treble damages. We cannot say that the district court committed manifest error in finding that the Appellee's prohibition against exporting the Mercedes ML320 automobiles was not an *492 unfair trade practice under La. R.S. 51:1401 et seq. The Unfair Trade Practices Law does not specifically define unfair trade practices, and what constitutes an unfair trade practice is determined on a case by case basis. Pelleteri v. Caspian Group Inc., 2002-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1241. However, some Louisiana courts have found that a practice is considered unfair under the Unfair Trade Practices and Consumer Protection Law when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors. Family Resource Group, Inc. v. Louisiana Parent Magazine, XXXX-XXXX (La.App. 1 Cir. 11//9/01), 818 So.2d 28.
We agree with the district court's finding that the Appellee's "policy prohibiting the exportation of the Mercedes ML320 for one year following delivery was not immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." While the Appellant argues that he was injured through the Appellee's wrongful seizure of the vehicle after a completed sale, we find that there never was a valid contract and no completed sale occurred; thus, there was no wrongful seizure of the ruby vehicle.
Because we find no violation by the Appellee of the Unfair Trade Practices and Consumer Act, we find that the Appellant is not entitled to treble damages under the Act, and we therefore pretermit any discussion as to the amount of treble damages due. We therefore affirm the judgment of the district court denying the Appellant damages under the Unfair Trade Practices and Consumer Act.
However, because there is no valid contract, we amend part of the judgment of the district court, and find that the Appellant is entitled to the full return of his deposit for the black ML320 automobile in the amount of Five Hundred Dollars and No Cents ($500.00).
Accordingly, we find that the district court correctly found that the Appellant's concealment of his agency status was sufficient to vitiate the contract for want of consent, and we therefore affirm the district court judgment dismissing the claims of the Appellant. However, we amend the judgment of the district court and find that the Appellant is entitled to a full return of his deposit of Five Hundred Dollars and No Cents ($500.00) for the second automobile.

Decree
For the reasons stated herein, the judgment of the district court rescinding the sale is affirmed in part, and is amended to require the return of the Appellant's deposit.
AFFIRMED IN PART, AND AMENDED IN PART.