DANIEL L. DYSART, Judge.
|,This appeal is taken from a judgment in favor of appellees (defendants/plaintiffs-in-reconvention), Donna Blunt and Patricia Nicholson (sometimes collectively referred to as “appellees”), dismissing the claims of Kenneth Landix, appellant (plaintiff/defendant-in-reconvention). For the reasons set forth below, we affirm the trial court’s judgment.
FACTUAL BACKGROUND
This case concerns the reconstruction and renovation of a home located at 3126 N. Johnson St., in New Orleans, Louisiana (the “Property”), and owned by Patricia Nicholson and her daughter, Donna Blunt.[1] The home was damaged as a result of Hurricane Katrina and renovation/reconstruction began some time in September of 2007, after appellees received funding for repairs from the Road Home program. At that time, Ms. Blunt was involved in a romantic relationship with Mr. Landix and the two were living together. Mr. Landix offered to help with the renovation of the Property. Neither party disputes that Mr. Landix performed work on the Property, although much of the work, including the replacement of ^flooring, the installation of central air conditioning, plumbing and electrical work, was contracted out. The dispute in this case concerns monies Mr. Landix claims he is owed for the work he performed and for alleged expenses he incurred.
Mr. Landix filed suit on September 15, 2008, and his Petition for Damages for Breach of Contract and Unjust Enrichment (“Petition”) alleges that appellees paid him $12,000 but still owe $68,000. The amount of damages sought is unclear as the Petition also states that Mr. Landix has “$29,510 in unpaid expenses” and “has not been compensated for the payments made to the subcontractors.” However, the prayer for relief again seeks the sum of $68,000, together with judicial interest, attorney’s fees and costs.
In response to the Petition, appellees filed an Answer and Reconventional Demand, in which they alleged that Mr. Lan- *378 dix’s work was defective or performed in an unworkmanlike manner. In their Re-conventional Demand, appellees sought the return of all monies paid to Mr. Landix and “other damages.”
This matter proceeded to a bench trial on May 29, 2012, following which judgment was rendered on May 31, 2012 in favor of appellees, dismissing Mr. Landix’s Petition in its entirety. Reasons for Judgment were issued the same date, which found “Ms. Blunt to be extremely credible” and likewise found the testimony of Mr. Landix to be “totally incredible and unbelievable.”
In its well-explained Reasons for Judgment, the trial court stated:
The Court believes Ms. Blunt, that she paid Mr. Landix all the money required and requested by him for the job. According to the checks produced by Ms. Blunt, she noted “home improvement” in the memo section as well as the one check that was written to Mr. Lan-dix. A computation of those figures shows that $78,200 was paid for the work performed on the property at 3126 North Johnson Street. Given Plaintiffs agreement that |a$49,500 was excessive for the work, the Court finds that he was adequately compensated for the work.
There was no contract that existed between the parties. One document Mr. Landix initially produced as the contract [sic]. However, under cross examination, he denied that the amount on that agreement was, in fact, his agreement with Ms. Blunt ... [T]he Court finds that Mr. Landix, the plaintiff, has failed to meet his burden of proof that defendants ... owe him any additional sums for the renovation of the property ...
Mr. Landix has timely appealed the trial court’s judgment.[2]
STANDARD OF REVIEW
The judgment in this matter is based, in large part, on the trial court’s factual findings and its evaluation of the witnesses and their credibility. In reviewing those findings, we note that an appellate court must review factual determinations made by the trial court using the manifest error or clearly wrong standard. Mayeux v. Rocky & Carlo, Inc., 07-0687, p. 2 (La.App. 4 Cir. 4/23/08), 984 So.2d 177, 179; Urology Clinic of New Orleans, Inc. APMC v. United Fire and Cas. Co., 08-0444, p. 2 (La.App. 4 Cir. 9/10/08), 993 So.2d 803, 806.
When a trial court’s factual findings are based on the credibility of witness’s testimony, the appellate court must give great deference to the fact finder’s decision to credit a witness’s testimony. Cottingim v. Vliet, 08-1263, p. 4 (La.App. 4 Cir. 8/12/09), 19 So.3d 26, 28, quoting Watters v. Dep’t of Soc. Servs., 08-0977, p. 8 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1142. The deference afforded the trial court’s “reasonable evaluations of credibility and reasonable inferences of fact” is “based, in part, on the trial court’s ability to better evaluate the testimony of live witnesses, compared with an appellate court’s sole reliance upon a written record.” Wooley v. Lucksinger, 09-0571, p. 50 (La.4/1/11), 61 So.3d 507, 555. (Citations omitted). The Wooley court further recognized that this standard of review is based on “the proper allocation of trial and appellate functions between the respective courts.” Id.
DISCUSSION
It is clear from the record that no written contract existed between the parties *379 and no party contends that a written contract existed. Appellant, however, maintains that he entered into an agreement with Ms. Blunt for the renovation of the property, thereby creating a contract. Appellant relies on two factors to establish the existence of a contract. First, he maintains that Ms. Blunt acknowledged certain documents at trial, citing certain portions of her testimony. Second, appellant cites Ms. Blunt’s testimony where she agreed that appellant was to be paid for the work.
The trial court rejected appellant’s arguments and found that “no contract ... existed between the parties.” We find no manifest error in this determination. See: Sam Staub Enterprises, Inc. v. Chapital, 11-1050, p. 5 (La.App. 4 Cir. 3/14/12), 88 So.3d 690, 693 (“[t]he existence or nonexistence of a contract is a question of fact and, accordingly, the determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong” (Citations omitted)); Tallulah Const., Inc. v. Northeast Louisiana Delta Community Development Corp. 07-1029, p. 5 (La.App. 4 Cir. 4/23/08), 982 So.2d 225, 229 (“[A trial court’s] determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong.” (Citations omitted)).
Under La C.C. art. 1846, a contract not reduced to writing which exceeds $500 “must be proved by at least one witness and other corroborating | ¿circumstances.” Thus, as in this case, where appellant claims to be owed well in excess of $500, he bears the burden of proving the existence of a contract.
We have reviewed those pages of Ms. Blunt’s testimony upon which appellant relies in support of his position that a contract was formed and note that the documents she identified include: “a written estimate from First Impression Home Improvement (not an estimate from appellant); a building permit dated September 10, 2007; and a document entitled City of New Orleans Department of Public Safety and Permits Application for Substantially Damaged Determination.”[3] None of these documents substantiate the existence of an oral contract between appellant and appel-lees.
Similarly, while Ms. Blunt may have agreed that appellant was to be paid for his work, we do not find that this created a binding contract for appellant to serve as a general contractor, as he contends. A binding contract requires consent of the parties, established through offer and acceptance, and a meeting of the minds. Kaufman v. Audubon Ford/Audubon Imports, Inc., 04-1540, p. 5 (La.App. 4 Cir. 4/27/05), 903 So.2d 486, 489, writ denied, 05-1286 (La.12/9/05), 916 So.2d 1060. As this Court found in Sam Staub Enterprises, supra, the record in this matter does not support a finding that there was a meeting of the minds between the parties.
Because we do not find error in the trial court’s determination that no contract existed, it follows that appellant has no breach of contract claim. See, e.g. Stanton v. Tulane University of Louisiana, 00-0403, p. 12 (La.App. 4 Cir. 1/10/01), 777 So.2d 1242, 1249 (“[i]n order to prevail on *380 a breach of contract claim, [plaintiff] must first prove the existence of a contract”).
We now turn to appellant’s contention that he should have been awarded a “reasonable amount for his labor and materials.” The only testimony as to the amount appellant was to be paid was his self-serving testimony that Ms. Blunt agreed to pay him “$49,500 ... on completion of the job,” which sum did not include materials and supplies (which he testified amounted to $29,510, a sum which he also maintains he is owed).[4]
Appellant’s testimony that he “paid for the bulk of the materials out of [his] pocket” is belied by his admission that he had no checking account, no savings account and no credit card. Appellant relies on a portion of Ms. Blunt’s testimony where she appeared to admit that she did not pay him for the building materials; however, when asked directly whether appellant paid for “all of the items, materials that were purchased for the home” with “money that “[she] gave him,” Ms. Blunt testified in the affirmative. Her testimony was unambiguous:
Q. And most of these receipts ... were paid for how?
A. Cash.
Q. Do you know who purchased the items that are shown on that receipt or those receipts?
A. Mr. Landix purchased the items.
Q. And how did he get the money to purchase those items?
A. I gave him the money. I went to the bank, got the money from out of the bank and gave him cash.
[ 7While appellant testified that he had “maybe 20 grand” in savings at the time that the renovation work began, $13,000 of which came from a recent project, he offered no evidence in support of this fact, nor any evidence demonstrating that he, personally, paid for anything on the project. Likewise, with respect to his claim for the cost of his labor, we find no error in the trial court’s finding that “he was adequately compensated for the work.” The trial court reviewed the evidence admitted in this case, including Ms. Blunt’s checks on which she noted “home improvement” and concluded that Ms. Blunt paid $78,200 for the renovation work.[5]
We have examined all of the receipts appellant introduced at trial and, together, they total $20,646.78. Given the trial court’s finding that Ms. Blunt paid $78,200 for the renovation work less the actual costs represented by the receipts, there remains $57,553.22 for which there is no accounting. Accordingly, we find no error in the trial court’s determination that appellant was compensated for his work.
Lastly, we find no merit to appellant’s contention that the trial court erred in dismissing his case. Having found that appellant “failed to meet his burden of proof that defendants ... owe him any additional sums for the renovation of the property,” the trial court properly dis *381 missed the action. See, e.g. Cloy v. Lee, 01-920 (La.App. 5 Cir. 1/15/02), 807 So.2d 900, 905 (where court found no liability on defendants’ part, there was no “error in the trial court judgment dismissing the | ¡¿Plaintiffs case against the Defendants”); Bailey v. State Through Dept. of Health and Human Resources, 96-2797 (La.App. 4 Cir. 5/21/97), 695 So.2d 557, 562 (where plaintiffs “failed to meet their burden of proof to establish medical malpractice ... the trial court judgment dismissing the [plaintiffs’] suit ... is affirmed”).
CONCLUSION
After reviewing this matter, we find that the trial court’s evaluation of the evidence and testimony was accurate and reasonable and accordingly, we affirm the trial court’s judgment.
AFFIRMED

. The record does not reflect whether the home is titled to both Ms. Nicholson and Ms. Blunt, although Ms. Blunt testified that the home is owned by her mother over whom she has had power of attorney since 2006 or 2007. As no one raised the capacity of the parties in this lawsuit, we do not address whether Ms. Blunt is a proper party defendant.

. The trial court’s judgment is silent as to the demands set forth in the Reconventional Demand. Appellees did not answer the appeal or otherwise raise the trial court’s failure to address their Reconventional Demand in this appeal.

. During Ms. Blunt's testimony, she was also asked to identify an undated, unsigned handwritten note entitled "Job site” which appellant later testified was what he "basically was gon'[sic] be doing Johnson on Street [sic]” and which appears to be a list of renovations to be made. She did not recognize this document, although we note that it contains basically the same listing of work to be done that was included in the First Impression Home Improvement estimate, and states $49,500 at the top which, curiously, is the amount of the First Impression Home Improvement estimate.

. It is evident that appellant is not clear as to the amount he claims he is owed. Appellant’s Petition seeks $68,000, while he testified that he is owed $49,500, plus the expenses he claims to have incurred in the amount of $29,500. These sums total $79,000. Likewise, at some later point in his testimony, appellant indicated that he was out of pocket "roughly about [$]15,000."

. The record does not contain any of appel-lees' exhibits, including her checking account records and no explanation is given for their absence. However, we note that Ms. Blunt's checking account records were actually introduced into the record with no objection and appellees’ counsel identified numerous checks (also introduced into evidence), all of which were considered by the trial court in rendering judgment.