| | | |
|---|---|---|
| COMMUNITY DEVELOPMENT CAPITAL | * | NO. 2021-C-0003 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| HOUSING CORPORATION OF AMERICA, GREGORY SWAFFORD, AND VANESSA MARIE CALISTE SWAFFORD AND HOLDING RENAISSANCE PROPERTY, LLC | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-10045, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Daniel L. Dysart, Judge Rosemary Ledet)


Robert A. Mathis
NEWMAN, MATHIS, BRADY & SPEDALE, APLC
433 Metairie Road, Suite 600
Metairie, LA 70005

     COUNSEL FOR PLAINTIFF/RELATOR

Gregory Swafford
ATTORNEY AT LAW
4734 Franklin Street
New Orleans, LA 70122-6112

     COUNSEL FOR DEFENDANTS/RESPONDENTS

           **WRIT GRANTED; JUDGMENT REVERSED AND RENDERED; REMANDED WITH INSTRUCTIONS**

           **February 24, 2021**

Relator—Community Development Capital ("Community")—seeks supervisory review of the trial court's December 11, 2020 judgment denying its summary judgment motion. Because Community has established its entitlement to summary judgment, we grant Community's writ, reverse the trial court's judgment, and render judgment dismissing the claims filed against Community by Respondents—Gregory and Vanessa Swafford (the "Swaffords") and Holding Renaissance Property, LLC ("HRP"), a company owned by the Swaffords.[1] We also remand with instructions that the trial court order the cancellation of Respondents' notice of *lis pendens*.

## FACTUAL AND PROCEDURAL BACKGROUND

Community commenced this litigation by filing two separate suits for executory process to foreclose on mortgages executed by the Swaffords. The mortgages encumbered two properties located in New Orleans, Louisiana—6726 Lamb Road (the "Lamb Property") and 5524 Lafaye Street (the "Lafaye Property"). There was a sheriff's sale, and Community acquired the two properties

---

[1] In compliance with the requirements of La. C.C.P. art. 966(H), this court provided the parties an opportunity to provide additional briefing and to request oral argument, if desired, pursuant to La. C.C.P. art. 966(H).

at the sheriff's sale.[2] Thereafter, Community sought possession of the two properties.

In September 2019, Respondents informed Community of their desire to re-purchase the two properties. Following negotiations, Respondents re-purchased the Lamb Property; however, the negotiations to re-purchase the Lafaye Property failed. Seeking to prevent Community from taking possession of the Lafaye Property, Respondents, in June 2020, filed a petition for temporary restraining order, preliminary injunction, and permanent injunction. The petition sought an injunction of the sheriff executing a writ of possession or eviction of the occupants of the Lafaye Property or both. The petition also sought a declaration of invalidity of contract; unconscionability; adhesion; and, in the alternative, detrimental reliance. The petition alleged the following:

- Respondents requested a purchase agreement for the Lafaye Property and the Lamb Property;

- In January 2020, Respondents purchased the Lamb Property for $200,000;

- Community initially indicated it would permit Respondents to purchase the Lafaye Property for $187,000, but it increased the purchase price to $189,833.18; and

- Respondents were unable to move forward with the purchase and financing of the Lafaye Property.

_____

[2] Before the sheriff's sale, Housing Corporation of America ("HCA") and the Swaffords, in January 2017, filed a petition for a preliminary and permanent injunction to enjoin the sheriff's sale. The same month, the parties entered into a consent judgment dismissing the petition for injunction; and the sheriff's sale was scheduled. In April 2017, a sheriff's sale was held, at which time Community became the adjudicatee of the two properties. The sheriff's deed was recorded for each property on June 13, 2017. Meanwhile, HCA and the Swaffords sought to annul the sheriff's sales. In December 2017, Joshua Gaines and Corey Chandler, who alleged that they were the owners of the properties as a result of a transfer from the Swaffords, filed a petition for intervention and sought to annul the sale. The same month, the two suits to annul the sheriff sales were consolidated. On motions for summary judgment and exceptions, the trial court dismissed the two suits to annul. This court affirmed the trial court's decisions dismissing the suits to annul. _Community Dev. Capital v. Hous. Corp. of Am._, 19-0045, 19-0046 (La. App. 4 Cir. 7/31/19), ___So.3d ___, 2019 WL 3470936.

In July 2020, the trial court denied the preliminary injunction. The same month, Respondents recorded a notice of *lis pendens* on the Lafaye Property. The following month, Respondents filed another motion for temporary restraining order, preliminary injunction, and permanent injunction to enjoin the writ of possession. The second petition also included a breach of contract claim. In the second petition, Respondents alleged the following:

- In January 2020, Community entered into a contract for the purchase of the properties;

- Respondents accepted the offer to purchase the Lafaye Property at $187,000; and

- Community unilaterally without agreement increased the purchase price to $189,833.18.

The same month, the trial court denied the preliminary injunction; the sheriff executed the writ of possession; and Community obtained possession of the Lafaye Property.

In September 2020, Community filed a summary judgment motion, seeking dismissal of Respondents' remaining claims pled in their injunction petitions. In its motion, Community argued that Respondents failed to produce any written contract demonstrating an agreement to purchase was ever confected. Community also requested Respondents' notice of *lis pendens* be cancelled, citing La. C.C. P. art. 3753.[3] In support, Community submitted the affidavits of two individuals:

---

[3] La. C.C. P. art. 3753 provides:

> When judgment is rendered in the action or proceeding against the party who filed the notice of the pendency thereof, the judgment shall order the cancellation of the notice at the expense of the party who filed it, and as part of the costs of the action or proceeding. Nevertheless, the notice of pendency filed in connection with the proceeding which gave rise to the judgment shall be canceled at the request of any interested party if the judgment has been canceled or if the action or proceeding has been dismissed.

3

(i) its fund manager, Lisa Mazique; and (ii) its attorney, Robert Mathis (the "Affidavits"). The Affidavits are similar and set forth the following account of the events that transpired between the parties between September 13, 2019, and August 10, 2020. Community also submitted various correspondence between the parties and documents, which were referred to in the Affidavits—letters written by Community's attorney dated January 28, 2020[4] and June 11, 2020[5]; an unsigned Agreement to Transfer and Purchase; a Louisiana Residential Agreement to Buy or Sell, containing only Respondents' initials; and a June 24, 2020 email.[6]

Opposing the summary judgment motion,[7] Respondents submitted the same two letters from Community's attorney dated January 28, 2020, and June 11, 2020, and a real estate appraisal for the Lafaye Property, valuing the property at $230,000. According to Respondents, the two letters support a finding that a contract was formed between the parties. Respondents observed that the January 28, 2020 letter stated that the "commitment to sell Lafaye Street is conditioned upon closing of the transfer or Lamb [Property] today" and that the

---

[4] In the January 28, 2020 letter, Community offered to sell the Lamb Property for $200,000.00 and the Lafaye Property for $187,000.00. Community stated that the transfer of titles of both properties would be by a quitclaim deed and that the "commitment to sell Lafaye Street property is conditioned upon the closing of the transfer of Lamb Street today" and "should HRP fail to purchase Lafaye Street within sixty days hereof, [Community's] commitment to sell Lafaye shall expire."

[5] In the June 11, 2020 letter, Community offered to transfer by quitclaim deed the Lafaye Property for $189,883.18; and it stated that the purchase price must be received by Community "on or before June 25, 2020" and the "agreement shall expire at close of business, June 25, 2020."

[6] The June 24, 2020 email stated that Community declined Respondents' proposal and was moving forward with the writ of possession on June 30, 2020.

[7] The opposition did not address the alleged contract of adhesion or the claim for detrimental reliance.

Lamb Property sale occurred on that date. According to Respondents, their performance constituted their acceptance of the offer.

Community filed a reply arguing that the two letters were insufficient to prove an actionable contract and that any alleged agreement to purchase the Lafaye Property expired as the result of Respondents' inaction.

Following a hearing, the trial court denied Community's summary judgment motion.[8] This writ followed.

## DISCUSSION

In reviewing a trial court's ruling on a summary judgment motion, an appellate court applies a *de novo* standard and utilizes the same criteria that the trial court initially employs under La. C.C.P. art. 966. *See Harmonia, LLC v. Felicity Prop. Co., LLC*, 20-0253, 20-0254, p. 6 (La. App. 4 Cir. 11/25/20), ___ So.3d ___, ___, 2020 WL 6937836, *3 (internal quotation marks omitted). As this court observed in the *Harmonia* case, the procedural methodology and principles governing summary judgment review are well-settled:

---

[8] At the hearing, the trial court stated:

> "How do you get dismissal if they, let me ask you this, how do you, I did not find irreparable harm so I did not grant a permanent injunction. I don't have a problem dismissing to the extent, well I've already ruled as relates to both the preliminary and the permanent injunction, the question is whether or not plaintiff has filed in connection with this lawsuit also a breach of contract claim and to the extent there is an allegation of a breach of contract claim how do I dismiss this when in fact they continue to assert that there in fact an agreement that the agreement was never followed through and therefore breached, and that's an ordinary proceeding, and to that extent that you, on a summary judge [sic] I agree, if you come and show that there is no contract he then has the obligation to come and say oh yes there was, and so the question becomes a question of fact and who do I believe. You know I can't make credibility calls and determinations who I believe on a summary judgment motion, that's where I'm at and that's where I'm trying to figure out. He's loss [sic] everything else, no question, but does he lose at this juncture on a summary judgment, were not a trial, I'm not making judgment calls, I can't do that in summary judgment hearings."

- The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

- The governing statutory provision, La. C.C.P. art. 966, provides that a motion for summary judgment shall be granted if, "[a]fter an opportunity for adequate discovery," the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

- "A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Bufkin v. Felipe's La., LLC*, 14-0288, p. 3 (La. 10/15/14), 171 So.3d 851, 854.

- "[T]he burden of proof remains with the movant. [But], if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id*.

- "This [burden shifting] requires the [non-moving party] to make a positive showing of evidence creating a genuine issue as to an essential element of [its] claim; mere speculation is not sufficient." *Finch v. HRI Lodging, Inc*., 49,497, p. 7 (La. App. 2 Cir. 11/19/14), 152 So.3d 1039, 1043.

- Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270; *Maddox v. Howard Hughes Corp*., 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337.

*Harmonia*, 20-0253, 20-0254, p. 6, n. 9, ___ So.3d at ___, 2020 WL 6937836, *3.

When a summary judgment motion is made and supported, adverse parties may not rest on the allegations or denials of their pleadings; rather, their response—by affidavits or as otherwise provided by law—must set forth specific facts showing that there is a genuine issue for trial. If adverse parties fails to do so, summary judgment, if appropriate, shall be rendered against them. La. C.C.P. art. 967(B).

6

As the parties acknowledge, Respondents' remaining claim against

Community is a breach of contract claim.[9] A breach of contract claim requires

proof of the following three elements: (i) the obligor's undertaking of an obligation

to perform; (ii) the obligor's failure to perform the obligation (the breach); and

(iii) the obligor's failure to perform resulted in damages to the obligee. *New

Orleans Private Patrol Serv., Inc. v. Corp. Connection, Inc.*, 17-0746, p. 7 (La.

App. 4 Cir. 3/21/18), 239 So.3d 480, 484 (citing *Favrot v. Favrot*, 10-0986, pp. 14-

15 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09). When the object of a

contract is an immovable, additional form requirements apply. *See Holmes v. Paul*,

19-130, p. 6 (La. App. 5 Cir. 10/2/19), 279 So.3d 1068, 1073 (observing that

"[c]ontracts regarding the transfer or encumbrance of immovable property must be

in writing" and citing La. C.C. arts. 1839, 2440).[10]

"'[I]n order to prevail on a breach of contract claim, [a plaintiff] must first

prove the existence of a contract.'" *Landix v. Blunt*, 12-1231, pp. 5-6 (La. App. 4

---

[9] In Respondents first injunction petition, they also asserted claims for contract of adhesion and detrimental reliance. In Respondents' second injunction suit, these other claims were not repeated. Nor did Respondents oppose Community's summary judgment motion on these grounds. A contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms. Aguillard v. Auction Mgmt. Corp., 04-2804, pp. 9-10 (La. 6/29/05), 908 So. 2d 1, 8-9. The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *Luther v. IOM Co. LLC*, 13-0353, p. 10 (La. 10/15/13), 130 So. 3d 817, 825. To establish detrimental reliance, a party must prove the following three elements by a preponderance of the evidence: (i) a representation by conduct or word; (ii) justifiable reliance; and (iii) a change in position to one's detriment because of the reliance. *Luther*, 13-0353, pp. 10-11, 130 So.3d at 825 (citing *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, p. 31 (La. 4/12/05), 907 So.2d 37, 59). The evidence presented in support and in opposition to the summary judgment motion does not provide factual support for either of these claims. We thus find these claims unpersuasive and confine our analysis to the breach of contract claim.

[10] The pertinent statutory provisions, including La. C.C. arts. 1839, and 2440, are set forth elsewhere in this opinion.

Cir. 3/20/13), 112 So.3d 376, 379-80 (quoting *Stanton v. Tulane University of Louisiana*, 00-0403, p. 12 (La. App. 4 Cir. 1/10/01), 777 So.2d 1242, 1249). Stated otherwise, if no contract exists, then Respondents have no breach of contract claim.

On appeal, Community contends that the trial court erred in failing to grant its summary judgment motion given Respondents' failure to prove a contract existed regarding the Lafaye Property. Community further contends that it proved its entitlement to summary judgment for the following two reasons:

> (i)   The two offers promoted by Respondents, the January 28 and June 11, 2020 offers by Relator, were rejected by Respondents regarding the Lafaye Property and expired on the face of each document. A meeting of the minds was never attained; and

> (ii)  There existed no written purchase and sale agreement between the parties regarding the Lafaye Property.

We separately address each of these reasons.

*No meeting of the minds*

Respondents' claim that there is an enforceable contract is premised solely on the January 28, 2020, and June 11, 2020 letters from Community's attorney. Because the letters are the core of this dispute, we quote the pertinent provisions of each letter.

**January 28, 2020 letter:**

> This is to advise that Community Development Capital [("[Community"])] will sell, today, to Holding Renaissance Property, LLC ("HRP") [one of the Respondents], the real estate located at 6726 Lamb Street, New Orleans, Louisiana ("Lamb Street"), in return for the purchase price of $200,000.00, cash equivalent, payable to [Community], subject to no deductions for expenses. This transfer of title shall be by quitclaim deed containing the provision herein described below.

This is to further advise that [Community] will sell, within sixty (60) days hereof, to HRP, the property located at 5524 Lafaye Street ("Lafaye Street"), New Orleans. Louisiana, in return for the purchase price of $187,000.00, cash equivalent, payable to [Community], subject to no deductions for expenses. This transfer of title shall also be by quitclaim deed containing the provision herein described below. This commitment to sell Lafaye Street is conditioned upon the closing of the transfer of Lamb Street today, as hereinabove described. Furthermore, should HRP fail to purchase Lafaye Street within sixty days hereof. [Community's] commitment to sell Lafaye shall expire.[11]

**June 11, 2020 Letter:**

This is to advise that Community Development Capital [("[Community")] will transfer title by quitclaim to Holding Renaissance Property, LLC ("HRP") [one of the Respondents], the real estate located at 5524 Lafaye Street, New Orleans, Louisiana (the "Property"), in return for the purchase price of $189.883.18, cash equivalent, payable to [Community], subject to no deductions for closing costs, taxes or other expenses. The purchase price must be received by [Community] on or before June 25, 2020. This agreement shall expire at close of business, June 25, 2020. This transfer of title shall be by quitclaim deed. . . .[12]

The two letters do not establish a meeting of the minds among the parties to agree on the sale of the Lafaye Property. Although the January 28, 2020 letter states that the sale of the Lafaye Property is conditioned upon the sale of the Lamb Property, the next sentence of the letter, as Community emphasizes, states that "[f]urthermore, should HRP fail to purchase Lafaye [Property] within sixty days thereof, Community's commitment to sell [the] Lafaye [Property] shall expire." Moreover, according to the Affidavits, Community did not hear from Respondents regarding the Lafaye Property until May 2020, over sixty days later. Accordingly,

---

[11] The January 28, 2020 letter ended with the following statement: "[u]pon receipt of the $200,000.00 cash equivalent purchase price for the sale of Lamb Street, ["Community"] will cancel the eviction by writ of possession for Lamb Street scheduled for January 29, 2020; and, further, will postpone the eviction by writ of possession for Lafaye Street to a day no earlier than the 61st day hereafter."

[12] The June 11, 2020 letter ended with the following statement: "[u]pon timely receipt of the above described cash equivalent purchase price for the quitclaim of the Property described above, ["Community"] will cancel the writ of possession eviction for the Property presently scheduled for June 30, 2020."

under the terms of the January 28, 2020 letter, the offer to sell the Lafaye Property expired sixty days after January 28, 2020.

Likewise, the June 11, 2020 letter provided an expiration date. It offered to quitclaim the Lafaye Property for the increased purchase price of $189,883.18, stated that the purchase price must be received by June 25, 2020, and stated that the agreement "shall expire at close of business, June 25, 2020." The Affidavits and documents Community introduced establish that Community then sent an Agreement to Transfer and Purchase, but Respondents declined and forwarded another agreement on June 24, 2020, entitled Louisiana Residential Agreement to Buy or Sell. The June 24, 2020 email reflected that Community declined Respondents' proposed agreement. Moreover, the offer in the June 11, 2020 letter, by its terms, expired the next day, June 25, 2020.

Summarizing, the two letters reflect that the offers to sell the Lafaye Property were limited to certain time periods and that the failure to reach an agreement by certain dates would result in the termination of the offers. Stated otherwise, both letters contained an expiration date for Respondents to act. Neither an agreement to sell nor the sale of the Lafaye Property occurred within the stated time periods. Community and Respondents, thus, had no meeting of the minds to form an enforceable contract. As such, Community has established the lack of a contract between the parties on which a breach of contract claim could be based.

*Lack of proper form*

Regardless, the form requirement for an agreement to sell immovable property was not satisfied. *Holmes*, 19-130, p. 6, 279 So.3d at 1073.[13] While the

---

[13] The applicable statutory provisions regarding the form requirements are as follows:

letters arguably set forth a thing—the Lafaye Property—and a price, neither is an authentic act or act under private signature, which is required for an agreement to sell immovable property. Community established the lack of a written agreement signed by representatives of all parties to purchase the immovable property on Lafaye Street.

Because Community has established that no written agreement to sell the Lafaye Property existed between the parties and because Respondents' evidence fails to establish a genuine issue of material fact as to existence of an enforceable contract, we find that Community is entitled to summary judgment dismissing Respondents' claims against it.

As noted elsewhere in this opinion, Community also requests that if we grant its summary judgment motion, we order the Respondents' *lis pendens* be cancelled as required by La. C.C.P. art. 3753. Although we find this argument persuasive, we find it appropriate to remand with instructions ordering the trial court cancel the notice of *lis pendens*.

## <u>CONCLUSION</u>

---

- La. C.C. art. 2440 provides that a "sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839."

- La. C.C. art. 1839 provides, in part: "[a] transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath."

- La. C.C. art. 2623 provides that "[a]n agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance" and that "[a] contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates."

11

For the foregoing reasons, Relator's writ is granted, the trial court's December 11, 2020 judgment is reversed, and judgment is rendered granting Relator's summary judgment motion and dismissing Respondents' claims against Relator. This matter is remanded with instructions that the trial court order the cancellation of the notice of *lis pendens* filed by Respondents on July 23, 2020, as required by La. C.C.P. art. 3753.

**WRIT GRANTED; JUDGMENT REVERSED AND RENDERED; REMANDED WITH INSTRUCTIONS**