984 So.2d 177 (2008)
Sheila MAYEUX, et al.
v.
ROCKY & CARLO, INC., et al.
No. 2007-CA-0687.
Court of Appeal of Louisiana, Fourth Circuit.
April 23, 2008.
*178 Salvador M. Brocato, III, Dan A. Robin, Jr., Metairie, LA, for Sheila Mayeux and Barry Mayeux on behalf of their minor son, Ian Mayeux.
Thomas A. Robichaux, and LeRoy A. Hartley, LeRoy A. Hartley & Associates, New Orleans, LA, for John Sloan.
R. Todd Musgrave, Musgrave, McLachlan & Penn, L.L.C., New Orleans, LA, for Rocky and Carlo, Inc. and St. Paul Reinsurance Company, Ltd.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
This appeal arises from the alleged salmonella poisoning of individuals who consumed stuffed bell peppers from Rocky and Carlo's. The trial court awarded general and special damages to the plaintiffs. One plaintiff appeals his award of general damages, while another appeals his award of general and special damages, as he believes his appendectomy was causally connected to salmonella poisoning. We find that the trial court did not err or abuse its discretion in its awards for general and special damages and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On March 6, 2001, Sheila Mayeux ("Mrs. Mayeux"), her son Ian Mayeux ("Ian"), Bonnie Sloan ("Mrs. Sloan"), John Sloan ("Mr. Sloan"), and Lester Pilet, III ("Mr. Pilet") (hereinafter referred to as the "Plaintiffs") allegedly consumed stuffed *179 bell peppers prepared and served by Rocky and Carlo, Inc. ("Rocky"). All of the Plaintiffs began experiencing gastrointestinal distress with symptoms including nausea, stomach cramps, diarrhea, vomiting, and fever by the next day or soon thereafter. Upon learning of an alleged salmonella outbreak from Rocky's, the Plaintiffs filed a petition for injuries and damages against Rocky and St. Paul Reinsurance Company, Limited ("St. Paul").
Mr. Pilet dismissed his claims with prejudice due to a settlement. Mrs. Sloan and Mrs. Mayeux also later settled and dismissed their claims. The claims of Mr. Sloan and Ian proceeded to trial.
Rocky's and St. Paul moved for a directed verdict, which was denied. After a bench trial, the trial court awarded damages to Mr. Sloan and Ian. Mr. Sloan was awarded $5,000 in general damages and $644.69 in special damages. Ian was awarded $10,000 in general damages and $14,884.50 in special damages. Additionally, the trial court found that Ian did not prove that his appendectomy was causally related to the alleged salmonella poisoning. Ian's motion for a new trial was denied and this appeal timely followed as sought by Mr. and Mrs. Mayeux, on behalf of Ian, and Mr. Sloan.

STANDARD OF REVIEW
The factual findings made by the trier of fact are entitled to great weight on appellate review. Therefore, appellate courts utilize the manifest error or clearly wrong standard of review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Reviewing and reversing the factfinder's determinations involves a two-part test developed by the Louisiana Supreme Court. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). If no reasonable factual basis exists for the trial court's findings, then the findings are wrong or "manifestly erroneous" according to the record. Id. To determine whether the factfinder was clearly wrong, the reviewing court must examine the entire record. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Trial courts are in a better position to evaluate live witnesses and determine credibility. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). "[T]he appellate court must determine if the factfinder's decision was a reasonable one." Norfleet v. Lifeguard Transp. Serv., Inc., 05-0501, p. 5 (La.App. 4 Cir. 5/17/06), 934 So.2d 846, 852. "[W]here two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, 617 So.2d at 883.
Damage awards are reviewed using the abuse of discretion standard. Nguyen v. Grafton, 07-0046, p. 4 (La.App. 4 Cir. 6/27/07), 962 So.2d 488, 489. If the appellate court determines that an award is excessive or inadequate, then it may look to prior awards to adjust the amount. Id.

IAN MAYEUX
Mr. and Mrs. Mayeux, on behalf of their son, Ian, contend that the trial court erred by finding that his appendectomy was not causally connected to the alleged salmonella food poisoning and by awarding $10,000 in general damages.
Ian consumed stuffed bell peppers with Mrs. Mayeux from Rocky's on March 6, 2001. By the end of March 7, 2001, Ian began to suffer from vomiting, diarrhea and stomach pain. After a failed attempt to remedy Ian's illness with Imodium, Mrs. Mayeux took Ian to see his pediatrician, who advised Mrs. Mayeux to take Ian to Children's Hospital. Ian remained in Children's Hospital for one week with a diagnosis of perforated appendicitis. About a *180 month after being discharged from Children's Hospital, Ian had an appendectomy.

Appendectomy
Mr. and Mrs. Mayeux assert that Ian would not have had an appendectomy without suffering from the alleged salmonella food poisoning from Rocky's stuffed bell peppers.
Dr. Samuel Greenburg ("Dr. Greenburg"), Ian's expert in internal medicine, testified that Ian suffered from perforated acute appendicitis. He stated that the incubation period for salmonella is between eight and forty-eight hours, which is consistent with the time period in which Ian began experiencing gastrointestinal distress. Dr. Greenburg testified that Mrs. Mayeux's stool tested positive for salmonella and that Ian's case was compatible with a similar episode of salmonella poisoning. Further, he avowed that there was a reasonable possibility of a causal connection between salmonella ingestion and Ian's perforated appendix.
However, on cross examination, Dr. Greenburg testified that he never treated Ian and he would defer to Ian's treating physician. Additionally, as to Mrs. Mayeux's stool sample, he stated that salmonella could remain in someone's stool for years.
Dr. Donald Liu ("Dr. Liu"), Ian's treating physician and the surgeon in chief at Children's Hospital, also testified in his deposition that Ian suffered from perforated appendicitis. However, Dr. Liu stated, when asked if salmonella poisoning could cause appendicitis: "my feeling is that he's got  appendicitis is just appendicitis." He further testified that he does not know if food poisoning can cause appendicitis, but that he did not see a diagnosis of salmonella in all of Ian's lab reports. Lastly, Dr. Liu testified that it was possible that Ian had salmonella poisoning because the two conditions can exhibit the same symptoms. However, salmonella poisoning is an unlikely cause of appendicitis.
Ian's medical records from Children's Hospital indicate that he was "fully recuperated" at discharge. Additionally, Ian's surgery records state that he underwent an "elective interval appendectomy."
The trial court stated in its reasons for judgment that:
while the Court finds that Ian's stuffed bell pepper consumption precipitated an inflammation of his colon/appendix, it does not find there to be a causal relationship between the food poisoning and Ian's need for an appendectomy. Once the infection had been cured through medication, the plaintiff had failed to establish a causal link between the actual need for removal of the appendix and the original salmonella. This position is supported by the original C.T. scan which noted fluid but no demonstration of perforation and by a review of the operative discharge summary.
Upon our review of the evidence presented at trial, which was inconclusive as to salmonella poisoning causing appendicitis, we find that the trial court did not commit manifest error in finding that Ian failed to prove a causal connection between the alleged salmonella poisoning and his appendectomy.

General Damages
Mr. and Mrs. Mayeux also assert that the trial court abused its discretion in awarding $10,000 in general damages for Ian.
Mrs. Mayeux and Ian testified that they consumed stuffed bell peppers from Rocky's. Both stated that they began to suffer from gastrointestinal symptoms the following day. Neither Mr. Mayeux nor Ian's brother contracted the illness. Ian was allegedly ill for four days while in the *181 care of his mother and spent a week in the hospital. When asked about his pain, Ian stated that it was at level ten on a scale of one to ten. Mrs. Mayeux also testified that Ian's symptoms were severe, as compared to hers that she classified as serious. Ian testified that he missed two or more weeks of school.
Ian cites Arbourgh v. Sweet Basil Bistro, Inc., 98-2218 (La.App. 4 Cir. 5/19/99), 740 So.2d 186, for the premise that Ian's $10,000 award for general damages was inadequate and an abuse of discretion. However, in Arbourgh, this Court upheld a general award of $88,256 for three plaintiffs instead of one. Arbourgh, 98-2218, p. 18, 740 So.2d at 194-5.
Ian received a general damage award of $10,000 for two weeks of sickness, including one week of hospitalization. However, no evidence in the record established that Ian tested positive for salmonella poisoning. Both Drs. Greenburg and Liu testified that Ian was treated for perforated appendicitis. Also, unless the trial court abused its discretion in awarding general damages, the award cannot be disturbed. Considering the testimony in the record, we do not find that the general damage award of $10,000, while low, was an abuse of the trial court's discretion.

JOHN SLOAN
Mr. Sloan dined with a group at Rocky's on March 6, 2001, where he consumed stuffed bell peppers. By the afternoon of March 7, 2001, Mr. Sloan began feeling ill. Mr. and Mrs. Sloan went to the emergency room at De La Ronde Hospital (Chalmette Medical Center). Mr. Sloan was diagnosed with gastroenteritis of a presumed infectious origin, treated, and released. He received prescriptions to treat his symptoms until the illness subsided. Mr. Sloan testified that he felt healthy after approximately two weeks.
As stated above, unless the trial court abused its discretion, the appellate court cannot disturb an award for general damages. While the award might be low, we do not find that the trial court abused its discretion in awarding $5,000 in general damages to Mr. Sloan.

DECREE
For the above mentioned reasons, we find that the trial court did not err or abuse its discretion in awarding general and special damages and affirm.
AFFIRMED.
ARMSTRONG, C.J., concurs.
ARMSTRONG, C.J., concurring.
The discretion of the trial court in determining the amount of general damages is great, even vast. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993). Therefore, I concur in the result reached by the majority.