JAMES F. McKAY III, Chief Judge.
11Defendani/appellant, Dail Breaux (“Breaux”), appeals the trial court’s judgment, decreeing that plaintiff/appellee, Arthur DePodesta (“DePodesta”), did not sell his sixty percent ownership interest in La-kart Food Services, L.L.C. (“Lakart”) to Breaux. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
DePodesta created Lakart in 2000, and began operating the kitchen at Cooter Brown’s, a New Orleans tavern. In October 2005, DePodesta brought Breaux into the business. Pursuant to a written agreement, Breaux was given a forty percent ownership interest in Lakart; DePodesta maintained a sixty percent ownership. Lakart operated successfully, generating an annual income and bonuses for both parties.
In August 2009, DePodesta and Breaux started a second business, Hurricane’s Kitchen, L.L.C. (“Hurricane’s”), to operate *1019 the kitchen at a Metairie bar and grill. The new business was unsuccessful.
l2On August 24, 2009, Breaux had a friend draft a document (“Document”), which stated that DePodesta transferred his entire sixty percent ownership interest in Lakart to Breaux for $30,000.00. The Document, which is purportedly signed by DePodesta, indicates that the monetary consideration for the transfer was paid in full. Although the Document is signed by a notary and two witnesses, Breaux has acknowledged that these signatories were not present when Breaux and DePodesta signed the document. DePodesta denies signing the Document.
On August 27, 2009, Breaux recorded the Document in the Notarial Archives of Orleans Parish. Breaux also presented the Document to the Omni Bank where Lakart maintained its business account. Pursuant to the Document, DePodesta’s name was removed from the Omni account. DePodesta claims he had no knowledge of the Document until February 2010, when the Omni bank denied him access to La-kart’s account. DePodesta was also removed from Lakart’s payroll at that time.[1]
DePodesta filed a petition for fraud and rule to show cause for declaratory relief. The action alleges that Breaux forged or had forged DePodesta’s signature on the Document. DePodesta also sought to have the Document declared null and his ownership interest in Lakart reinstated.
This matter proceeded to a bench trial on July 11, 2012, and July 16, 2012. Judgment was rendered in favor of DePodesta on July 27, 2012, finding that DePodesta never sold or intended to sell his sixty percent ownership interest in |sLakart to Breaux, and declaring the Document null. The judgment is silent as to a finding of fraud on the part of Breaux.
At trial, counsel for DePodesta stipulated to the two handwriting experts’ reports, which stated that the signature on the Document appeared to be DePodesta’s. DePodesta acknowledged that the signature looked like his. However, he testified that he did not remember signing the Document, and would not have made such an agreement. DePodesta stated that he would never have sold his interest in La-kart for $30,000.00, explaining that his sixty percent interest was worth much more than that amount. DePodesta also denied receiving the $30,000.00 consideration, which the Document referenced.
Breaux testified at trial that DePodesta signed the Document in front of him, but admitted that the notary and two witnesses signed at a later date. When asked about the consideration for the transfer, Breaux testified that he did not actually pay DePodesta $30,000.00, but paid that amount in startup costs for Hurricane’s. In support of that assertion, Breaux introduced checks drawn on Lakart’s account for services and purchases in connection with Hurricane’s. However, it is important to note here that the checks relied upon by Breaux were dated after the execution of the Document.
DePodesta denied that the payments made for Hurricane’s from Lakart’s account represented consideration for a sale of his interest in Lakart. DePodesta testified that the parties agreed to a 50/50 split in Hurricane’s and agreed that the costs to get Hurricane’s running would be financed through Lakart.
14Breaux denied that he had any ownership interest in Hurricane’s. DePodesta *1020 countered this assertion by introducing Breaux’s 2009 income tax return, wherein he claimed a business loss from Hurricane’s. DePodesta also introduced the initial report and the articles of incorporation for Hurricane’s, which were notarized and signed by Breaux, listing Breaux as the registered agent and as a manager/member of Hurricane’s.
As an explanation for DePodesta’s motivation in selling Lakart, Breaux claimed that DePodesta was unhappy with the business and wanted out. On that subject, Breaux called Lakart employee, John Clements (“Clements”), as a witness. When asked if he ever heard DePodesta say that he wanted to get out of Lakart, Clements stated that “I don’t know about Lakart, I know he said he wanted to get out of the city, that entails getting out of Lakart, then I guess yes.” Otherwise, Clements had nothing else to say regarding DePodesta’s plans.
Following the testimony and the presentation of evidence, judgment was rendered in favor of DePodesta. Written reasons were not provided. However, a reading of the transcript of the July 16, 2012 proceedings reveals that the trial judge stated that she did not believe or trust Breaux. The trial judge also opined that while fraud was not proven, Breaux “did some underhanded things” and that “there was no intent by Mr. DePodesta to relinquish any and all rights that he had in Lakart for the sum of 30 thousand previously received. That was borne out clearly by the facts.... ” Breaux has timely appealed the trial court’s judgment.
STANDARD OF REVIEW
|sWhen a trial court’s factual findings are based on the credibility of witness testimony, as in the case sub judice, the appellate court must give great deference to the fact finder’s decision to credit a witness’s testimony. Cottingim v. Vliet, 2008-1263, p. 4 (La.App. 4 Cir. 8/12/09), 19 So.3d 26, 28, quoting Watters v. Dep’t of Soc. Sens., 2008-0977, p. 8 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128,1142. In reviewing those findings, an appellate court must review factual determinations made by the trial court using the manifest error or clearly wrong standard. Mayeux v. Rocky & Carlo, Inc., 2007-0687, p. 2 (La.App. 4 Cir. 4/23/08), 984 So.2d 177, 179.
DISCUSSION

Appellant’s assignments of error:

Breaux submits that the trial court failed to follow the established rule of law that a person is responsible for what he or she signs. Thus, he contends that it was manifest error not to uphold the sale from DePodesta to Breaux where Breaux fulfilled his contractual obligation.[2]
It is well established that a person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending he did not read the document, or that it was not explained, or that he did not understand it, barring misrepresentation, fraud, or violence. Jeansonne v. Attorney’s Liability Assur. Soc., 2003-1985, p. 7 (La.App. 4 Cir. 12/15/04), 891 So.2d 721, 726. See also Tweedel v. Brasseaux, 433 So.2d 133, 137 (La.1983) (stating: “The presumption is *1021 that parties are aware of the contents of writings to which they have affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived.”).
DePodesta does not claim that he failed to read the Document or that he did not understand the contents of the Document. Rather, DePodesta maintains that his signature on the Document was procured by fraud or misrepresentation, and that he did not consent to the sale of his interest in Lakart.
Consent is an absolute necessity to the formation of a contract, and “where there is no meeting of the minds between the parties the contract is void for lack of consent.” Philips v. Berner; 2000-0103, p. 5 (La.App. 4 Cir. 5/16/01), 789 So.2d 41, 45. La. C.C. art. 2439 defines a contract of sale and lists three requirements for its perfection. Those requirements are the thing, the price, and the consent of the parties. La. C.C. art. 2438 provides that the contract of sale is governed by the rules of general obligation and contract law where no special provision is made. La. C.C.P. art. 2456 requires a meeting of the minds on the thing, and the price, to perfect a contract of sale and transfer ownership.
The existence or nonexistence of a contract is a question of fact and, accordingly, the determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong. Sam Staub Enterprises, Inc. v. Chapital, 2011-1050, p. 5 (La.App. 4 Cir. 3/14/12), 88 So.3d 690, 693 (citing Price v. Law Firm of Alex O. Lewis, III & Associates, 2004-0806, p. 3 (La.App. 4 Cir. 3/2/05), 898 So.2d 608, 610-611). In the present case, the trial court found that a contract of sale did not exist between DePodesta and Breaux. Our review of the record supports that conclusion.
|7Based on the handwriting experts’ opinions and DePodesta’s own testimony that the signature on the Document appeared to be his, the trial court determined that there was sufficient evidence to find that DePodesta signed page three of the Document. However, as the trial court correctly noted, the only text contained on the signature page is a single paragraph relative to the parties’ right of first refusal to purchase the other’s interest in Hurricane’s. Thus, a question was raised as to whether DePodesta was provided with the first two pages of the Document, and whether he consented to the sale of his interest in Lakart. Breaux’s testimony also confirmed that he used a family friend to draft the Document rather than using Lakart’s accountant, who normally drafted all such documents for La-kart.
Breaux’s assertion that he had no ownership interest in Hurricane’s (to support his claim that payments to start Hurricane’s represented the consideration to buy DePodesta’s interest in Lakart) was refuted by the documentary evidence, i.e., Breaux’s 2009 tax return and Hurricane’s corporate documents. Likewise, the claim that Breaux paid $30,000.00 for the purchase of Lakart through payments made to start Hurricane’s, was contradicted by DePodesta’s testimony, and by the fact that the checks paid on behalf of Hurricane’s were dated after the execution of the Document. As previously stated, the Document, dated August 24, 2009, represents that the $30,000.00 was paid in full and received by DePodesta.
Finally, the evidence presented by De-Podesta supports his assertion that he did not know of the existence of the Document until February 10, 2010. Specifically, De-Podesta continued to receive his regular weekly paychecks from Lakart through *1022 February 2010, supporting his claim that he did not suspect anything before that time. DePodesta’s actions in February 2010, upon learning that he was removed from Lakart’s account at the Omni Bank, further reflected his |8lack of prior knowledge. At trial, DePodesta testified that on February 11, 2010, he sent letters to various parties concerning his ownership in Lakart. The letter sent to Lakart’s payroll company, Paychex, Inc., was introduced into evidence, and states in pertinent part: “This letter is to notify you that as of February 10, 2010, I have learned that I have been locked out of my company, Lakart Food Services, LLC and all its accounts due to a forged document by my partner, Dail Breaux dated August 24, 2009.”
Clearly, in this case, the dispositive factual issue is whether DePodesta consented to the sale of his business. The record supports the trial court’s finding that De-Podesta’s consent was lacking.

Appellee’s assignment of error:

■ In his brief to this Court, DePodesta asserts that the trial court erred by failing to use the proper legal standard for determining whether Breaux committed fraud. DePodesta requests that this Court review the matter de novo (using the proper preponderance of the evidence standard) and find fraud on the part of Breaux.
This assignment of error is not properly before the Court. A party who seeks to have a trial court judgment revised, modified, set aside, or reversed must either appeal or file an answer to the appeal. La. C.C.P. art. 2133; see also Walker v. Clarendon National Insurance Co., 2001-2338, p. 2 (La.12/14/01), 802 So.2d 1285, 1286. Because DePodesta neither appealed nor answered the appeal, we are precluded from entertaining this issue.
CONCLUSION
Considering our standard of review, and the evidence presented at trial, we cannot find the trial court was manifestly erroneous or clearly wrong in its | fldetermination that a contract did not exist for the sale of DePodesta’s ownership interest in Lakart to Breaux. Accordingly, we affirm.
AFFIRMED

. A March 29, 2010 consent judgment ordered that DePodesta be put back on the payroll pending trial.

. Breaux asserts an additional assignment of error, to wit: the trial court erred in not realizing that Breaux did not voluntarily agree to put DePodesta back on the payroll at Lakart, because Breaux’s statement was made under duress. However, the issue raised in this assignment of error does not stem from the July 27, 2012 judgment on appeal here. Rather, the agreement to put DePodesta back on the payroll was the subject of a prior consent judgment rendered by the trial court on March 29, 2010. Therefore, this assignment of error will not be discussed herein.