JAMES F. McKAY III, Chief Judge.
_JjGMD International, Inc. (GMD) was a Louisiana corporation formed by three members: Gilíes Casse, Mike Legget, and Damon Baldone. In November of 2002, Mr. Baldone, as president and chairman of the board of directors of GMD, executed a receivables purchase agreement with Gulf Coast Bank & Trust Company, Inc. (Gulf Coast), through its factoring division, in order to secure a loan for financing the business operations of GMD. The receivables purchase agreement set forth terms for a factoring arrangement between GMD and Gulf Coast. The agreement would allow for the purchase of GMD’s accounts receivable so that Gulf Coast could collect from GMD’s customers or accounts debtors directly. Mr. Baldone personally guaranteed the obligations of GMD as part of the agreement. The guaranty, in part, stated:
Should any event of default occur or exist under any of Obligor’s RPA Obligations in favor of GCBC, Guarantor unconditionally and absolutely agrees to pay GCBC the then unpaid amount of Obligor’s RPA Obligations in principal, interest, costs, expenses, attorneys’ fees and other fees and charges. Such payment or payments shall be made at GCBC’s offices, indicated above, immediately following demand by GCBC.
*849 [gThe 2002 RPA also indicated that the terms of Mr. Baldone’s obligation extended to “renewals, extension, modification, and rearrangements of the 2002 RPA without a release of guarantors,” The guaranty further stated:
The word “agreement” means this RPA Guaranty as this RPA Guaranty may be amended and modified from time to time. The words “RPA Obligations” means individually, collectively, interchangeably, and without limitation ... all renewals, extensions, modifications, and rearrangements of the indebtedness and obligations owing by Obligor under the RPA.
By the fall of 2004, all factoring of receivables had ceased and GMD’s obligations to Gulf Coast had been paid. Therefore, in January 2005, Gulf Coast proposed a new term sheet for factoring receivables and sent a letter to GMD with proposed terms for the change. These terms were agreed to by Mr. Casse, who signed the letter and sent it back to Gulf Coast. Once Gulf Coast received the letter, they reduced the interest rate on the loan.
Mr. Baldone sold his interest in GMD to Mr. Casse in 2007. In 2009, Gulf Coast was informed by GMD’s attorneys that some fraudulent activities had taken place. Shortly thereafter, GMD defaulted on the loan.
Gulf Coast filed suit against Mr. Casse, GMD and Mr. Baldone, seeking to recover damages from the defaulted obligations of GMD. At trial, Gulf Coast sought to enforce the GMD debt against Mr. Baldone, solely, as personal guarantor of the 2002 receivables purchase agreement between GMD and Gulf Coast. After several preliminary motions, the trial court narrowed the issue to whether the 2002 personal guaranty, endorsed by Mr. Baldone, attached to the default of GMD in 2009, or whether the guaranty extinguished on its own terms as a matter of law.
|aAt trial- Mr. Baldone attempted to prove that in May of 2009, Gulf Coast entered into a new agreement with GMD, and the alleged confection of that agreement extinguished GMD’s 2002 receivables purchase agreement and his continuing guaranty under various legal theories. Gulf Coast denied any such 2009 receivables purchase agreement was ever executed, perfected, occurred or closed while also showing that the release of Mr. Bal-done- was never its intent, -■ The only witnesses that Mr. Baldone called to testify to support his position that a new receivables purchase agreement came into existence in 2009 and that his guaranty was extinguished were Kyle Saucier and Wade Hladky, two Gulf Coast employees. However, Mr. Saucier and Mr. Hladky testified that there were three different versions of an attempted 2009 receivables purchase agreement. Mr. Saucier also testified that a decision of Gulf Coast to release a guarantor from the 2002 receivables purchase agreement could not be his own decision, but needed to go to “committee,” which never occurred.
The trial court issued its judgment on February 11, 2015. The trial court found that the 2002 personal guaranty made by Mr. Baldone, 6n behalf of GMD was never extinguished. Specifically, the court found that neither the 2005 term letter nor the 2007 sale of Mr.-Baldone’s shares in GMD terminated the guaranty. Additionally, the court found • that a 2009 receivables purchase agreement never existed. Rather, the court found that because Mr. Bal-done never requested, nor received a release of his guaranty from Gulf Coast, the 2002 guaranty was still valid, and Mr. Bal-done was responsible for GMD’s default. As such, the trial 14court granted judgment in favor of Gulf Coast and against Mr. *850 Baldone in the amount outstanding at the time of default ($2,109,221.69), plus unpaid fees, in the. amount of $127,030.86, plus interest until paid. Additionally, the trial court awarded Gulf Coast attorney fees in the amount of 40% of the final judgment, pursuant to the contingency fee agreement ’ entered into between Gulf. Coast, and its counsel.
•During the pendency of the aforementioned-lawsuit, Mr. Baldone filed-a petition for. damages against Gulf Coast in the 32nd Judicial District Court for Terre-bonne Parish, alleging that one .or more employees of Gulf Coast intentionally or negligently destroyed evidence that would have been favorable to him in the lawsuit that Gulf Coast had filed against him. This case was transferred to Orleans Parish Civil District Court following the trial court’s granting of Gulf Coast’s declinatory exception of improper venue. Thereafter, Gulf Coast filed an exception of res judica-ta/collateral estoppel. A hearing on the exception was held on March 27, 2015, at which time, the trial court orally granted the exception. A written judgment was issued on April 8,2015.
It is from the judgments of February 11, 2015 and April 8, 2015 that Mr.- Baldone now appeals.- For our purposes, the appeals of the February 11, 2015 judgment and the April 8, 2015 judgment have been consolidated. . • -
On appeal, Mr, Baldone raises the following assignments of error: 1) the lower court erred in finding that the 2009 receivables purchase agreement “never existed;” 2) the lower court erred in finding that the verbal release of Mr. Baldone, hand signed agreement with Mr. Baldone’s name stricken did not release Mr. Baldone’s guaranty; 3) the lower court erred in finding that the 2002 receivables purchase agreement was not extinguished, when in 2005, all obligations were paid and all activity on the account ceased; 4) the lower court erred in finding that article 2323 of the Louisiana Civil Code precludes an obli-gor in a contract action from asserting the defense of failure to mitigate damages, and as a result erred in not finding that Gulf Coast failed to mitigate its damages; 5) the lower court erred in finding that article 2323 of the Louisiana- Civil Code precluded Mr. Baldone’s defense that Gulf Coast breached its obligation of good faith-and fair dealing by authorizing advances. on fraudulent invoices despite clear signals that fraud was occurring; 6) the lower court abused its discretion in denying-'Mr, Baldone’s negative inferences against Gulf Coast or a new trial, based upon Gulf Coast’s substantial discovery violations-and failure to produce evidence; - 7) the lower court erred in refusing to consider Mr. Baldone’s defense to liability based upon Gulf Coast’s impairment of the collateral securing the obligation under Louisiana Civil Code Article 3062; 8) the lower court erred in granting Gulf Coast’s exception of res judicata/collateral estoppel; 9) the lower court erred in enforcing obligations for sales of fraudulent receivables, when the fraud was known or should have been known to the-purchaser and seller-at the time of purchase; and 10) the lower court erred in awarding an unreasonably high award of attorney fees to Gulf Coast without examining the required factors or providing Mr. Baldone a reasonableness hearing.
| (Assignments of Error Nos. 1 & 2
In November of 2002, Mr. Baldone, on behalf of GMD, entered into a receivables purchase agreement (RPA) with Gulf Coast. As part of this RPA, Mr. Baldone personally guaranteed the obligations of GMD. In May of 2009, a new receivables purchase agreement was contemplated by Gulf Coast and GMD. A' draft of this document was sent from Gulf Coast to Mr. *851 Casse. Sometime • thereafter, Mr. Casse signed the proposed 2009 receivables purchase agreement and electronically delivered the draft to Gulf Coast with Mr. Baldone’s name scratched out on the signature page; however, no one including Mr. Casse removed Mr. Baldbne’s name on schedule A of the proposed 2009 agreement, which still listed Mr. Baldone as a guarantor of said document. After receiving the document for review, Kyle Saucier signed it and forwarded it to his superior, Wade Hladky, for approval. Mr. Hladky noticed that Mr. Baldone’s name was scratched out on the draft and stated that the proposed 2009 agreement required Mr. Baldone’s guaranty for Gulf Coast to enter in such an agreement.
‘ Contracts of guaranty on surety-ship are subject to the same rules of interpretation as contracts in general. Ferrell v. South Central Bell Telephone Co., 403 So.2d 698 (La.1981). “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” Wooley v. Lucksinger, 2009-0571, p. 56 (La.2011), 61 So.3d 507, 558.
|7In the instant cape, Mr. Baldone has been bound to guaranty GMD’s obligations to Gulf Coast from the. time of the 2002 receivables purchase agreement. This is clear from the plain language of that document, which was agreed to by both Gulf Coast and Mr. Baldone (in both,his individual capacity and on behalf of GMD). The facts of this .case also show that a new receivables purchase agreement, although contemplated, was never entered into in May of 2009. Accordingly, we find no error in the trial court’s findings with regards to Mr. Baldone’s'first two assignments of error.
Assignment of Error No. 3
In his third assignment of error, Mr. Baldone contends that the lower court erred in finding that the 2002 receivables purchase agreement was not extinguished, when in 2005, all obligations were paid and all activity on the account ceased. At the beginning of 2005, Elizabeth Costa of Gulf Coast provided GMD with a letter making certain proposals for GMD to lower its factoring discount rate. The letter itself provided that in no way should it be considered as an offer of a new agreement by Gulf Coast. In 2005, Gulf Coast lowered the discount rate for the benefit of GMD, but no new receivables purchase agreement was made, executed, or closed upon. Factoring picked up again for GMD in February of 2005 under the original agreement and continued throughout this time period until 2009.
Based on the plain language of the 2002 receivables purchase agreement and Ms. Costa’s letter as well as for the same rationale applied to our review of Mr. IsBaldone’s first two assignments of error, we find no error on the part of the trial court with regards to his third assignment of error.
Assignment of Error No. 4
 In his fourth 'assignment of error, Mr. Baldone argues that the lower court erred- in finding that La. C.O. art. 2323 precludes ah obligor in a contract action from asserting the defense of failure to mitigate damages, and as a résult erred in not finding that Gulf Coast failed to mitigate its damages.
The testimony of Wade Hladky showed that the payment by wire transfer by GMD was a normal occurrence and not a suspicious activity. The 2002 receivables purchase agreement states “unless otherwise approved by GCBC, the invoice for the Receivable must set forth, as the sole address for payment, the Lockbox address, *852 or if payment is to be by wire transfer, by ACH transfer to a controlled account at GCBC, with the notation of the invoice number being paid.” As such, wire transfers were á normal part of the business relationship between GMD and Gulf Coast.
The doctrine of mitigation of damages imposes upon the injured party a duty to exercise reasonable diligence and ordinary care in attempting to minimize his damage after he is aware of the damage and the injury. The burden rests with the wrongdoer to show that the victim of tortious conduct failed to mitigate damages. Orthopaedic Clinic of Monroe v. Ruhl, 34,700 (La.App. 2 Cir. 5/11/01), 786 So.2d 323. In the instant case, Gulf Coast was not aware of the fraudulent activity until notified by counsel for GMD. Mr, Baldone could not prove at trial and cannot Inprove now that Gulf Coast failed to mitigate its damages. Accordingly, Mr. Baldone’s fourth assignment of error is without merit.
Assignment of Error No. 5
In his fifth assignment of error, Mr. Baldone contends that the lower court erred in finding that La. C.C. art. 2323 precluded his defense that Gulf Coast had breached its obligation of good faith and fair dealing by authorizing advances on fraudulent invoices despite clear signals that fraud was occurring. The trial court found that the alleged negligence on the part of Gulf Coast did not breach the alleged obligations of good faith- and fair dealing, and the evidence submitted did not show knowledge, intent, ill will or the like upon the part of Gulf Coast in relation to GMD’s fraudulent actions in order to equate to the bad faith necessary for such a defense.
Louisiana Civil Code Article 2323, which deals with comparative fault states:
A. In any action for damages where a person suffers death, or loss, the degree or percentage of fault of all persons causing or contributing to the -injury,- death or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of La.
. . (R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person sufi fering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
| inC. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tort-feasor, his claim for recovery of damages shall not be reduced.
The original legal question before the trial ‘court was whether Mr. Bal-done, as a guarantor was even allowed to assert a comparative fault/negligence defense when -the principal obligor, GMD, was an intentional tortfeasor. Louisiana law holds that the guarantor/surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity *853 or discharge in bankruptcy of the principal obligor. See La. C.C. art. 3046. Furthermore, a surety stands in the shoes of the principal obligor. As GMD was intentionally fraudulent, La. C.C. art. 2323 C would prohibit it from raising the defense of comparative fault and negligence as it was an intentional tortfeasor. Therefore, Mr. Bal-done is also prohibited from doing so. Accordingly, Mr. Baldone’s' fifth assignment of error is without merit.
Assignment of Error No. 6
In his sixth assignment of error, Mr. Baldone contends that the trial court abused its discretion in denying him negative inferences against Gulf Coast or a new trial, based upon Gulf Coast’s substantial discovery violations and failure to produce evidence. Mr. Baldone bases this assignment of error on his allegations that Gulf Coast failed to produce Chad Morrow’s Sher Gamer/GMD file during the discovery process and Gulf Coast’s failure to produce to him a number of other documents during the pre-trial discovery process.
At the deposition of Wade Hladky in October of 2013, Mr. Baldone and his attorneys were told that the law firm of Sher Garner had been designated to be the closing attorneys for any 2009 receivables purchase agreement closing. However, InMr. Baldone did not serve upon Mr. Morrow (an attorney at Sher Garner) á subpoena duces tecum to produce documents related to his GMD/Gulf Coast file until March 15,2014. Thereafter, on April 2, 2014, pursuant to the subpoena, Mr. Morrow produced documentation to Mr. Baldone, while also withholding documents he deemed privileged attorney-client communications. Mr. Baldone did not file a motion to test the sufficiency of the privileged assertion. At trial, Mr. Morrow appeared and produced his entire file to the court. The court advised that it would examine the file in an in-camera inspection, and determine which of the withheld documents, if any, would be produced. Following its inspection, the trial court allowed Mr. Baldone access to the entire file.
Mr. Baldone also contends that Gulf Coast destroyed, hid or withheld a number of other documents during the discovery process. These included: 1) the original signed copy of the 2009 receivables purchases agreement; 2) the memo of Allen Frederic to Guy Williams regarding the bogus receivables;[1] 3) the signed and stamped schedules of receivables and the detailed collection report; and 4) emails sent by Gulf Coast employees.
At trial, several copies of an incomplete, attempted 2009 receivables purchase agreement were stipulated into evidence by the parties, as if the original without objection. However, because the 2009 receivables purchase agreement was never closed or perfected, it is problematic for Mr. Baldone to argue as to what actually constitutes an “original.”
| ^Regarding Allen Frederic’s memorandum to Guy Williams, Mr. Frederic testified at trial as to what the contents contained therein were (although, Mr. Williams could not remember ever seeing or receiving a copy). Therefore, if such a document did exist, Mr. Frederic testified as to its contents, and under the Rules of Evidence, that testimony became the. best evidence of its contents. See La. C.E. art. 1007.
*854 Regarding the signed and stamped schedules of receivables and the detailed collection report, a large portion of the discovery that Mr. Baldone requested during the pre-trial discovery period were produced in a computer-generated format. The fact that some handwritten information was inputted into a program is not spoliation, but rather general practice to use computer software to input information and that product is what was given to Mr. Baldone. These reports contained “note columns” which Mr. Hladky testified would help to explain some of Gulf Coast’s pre-purchase verification, and other “columns” of information in Gulf Coast’s computer software used to verify the- GMD receivables purchase account.
Regarding the Gulf Coast emails, the un-contradicted testimony at trial is that Gulf Coast’s long standing policy is that all emails are erased after ninety (90) days. Therefore, it was not lost upon the trial court that before Gulf Coast had knowledge of the alleged fraud, any emails that would have been in Gulf Coast’s email system would have already been gone.
Considering the foregoing, we find no merit in Mr. Baldone’s sixth assignment of error.
1 ^Assignment of Error No. 7 .
In his seventh assignment of error, Mr. Baldone contends that the trial court erred in refusing to consider his defense to liability based upon Gulf Coast’s alleged impairment of the collateral securing the obligation under La. C.C. art'. 3062. For many of the same reasons already discussed regarding assignments of error numbérs 1, 2," 4, and '5, this assignment of error has no merit. The trial court heard testimony concerning the manner in which GMD and Gulf Coast did business. The trial court also had evidence before it concerning any impairment of capital securing the obligation. However, the trial court, as the trier of fact, chose to give no credence to Mr.-Baldone’s supposed defense. We find no error, in the trial court’s decision.
Assignment of Error No. 8
In his eighth assignment of error, Mr. Baldone contends that the trial court erred in granting Gulf Coast’s exception of res judicata/collateral estoppel. As stated earlier, Mr. Baldone filed a petition for damages against Gulf Coast in the 32nd Judicial District Court before the issuance of a judgment in the original lawsuit between the parties. However, prior to the filing of the second"' lawsuit, Mr. Baldone also filed an FDIC complaint against Gulf Coast, a bar complaint against Gulf Coast’s attorneys and a. motion for sanctions for faitee to comply with order compelling discovery and for spoliation of evidence. These all revolved around the same allegations that Mr. Baldone later raised'in his petition for damages regarding Gulf Coast’s alleged actions that it “intentionally and/or negligently destroyed evidence” during the course of or prior to the first lawsuit.
In the motion for sanctions for failure to comply with order compelling discovery and for spoliation of evidence, Mr. Baldone had alleged and averred that |u“[Gulf Coast] either intentionally or negligently destroyed evidence” during the course of or prior to the first lawsuit. The trial court heard the motion and provided judgment denying said motion and all requested relief. Many months later in the now consolidated matter, the trial court heard Gulf Coast’s exception of. res judicata/col-lateral estoppel regarding Mr. Baldone’s petition for damages, which was heard and sustained.
According to La. R.S. 13:4231, res judicata bars re-litigation of a subject *855 matter arising from the same transaction or occurrence as a previous action. Maschek v. Cartemps, USA, 2004-1031, p. 5 (La.App. 4 Cir. 2/16/05), 896 So.2d 1189, 1193. La. R.S. 13:4231 embraces the broad usage of the phrase “res judicata to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel).” Id. Under claim preclusion, a res judicata judgment on the merits precludes the parties from re-litigating matters that were or could have been raised in that action. Id. Under collateral estoppel/issue preclusion, once a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of the same issue in a different cause ■ of action between the same parties. Id. “Thus, res judicata used in the broad sense has two' different aspects: 1) foreclosure of re-litigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of re-litigating matters that have been previously litigated and decided.” Id. (citing Certified Finance, Inc. v. Cunard, 2001-0797, p. 6 (La.App. 1 Cir. 4/17/12), 838 So.2d 1, 4),
In the instant case, the1 judgment .issued with regard to, the motion for sanctions for failure to comply with order. compelling discovery and for spoliation of evidence,was conclusive between the parties, was actually litigated, and was determined on the merits. As such, the judgment was final. The facts, 1 ^transactions, and occurrences were the exact same, were litigated and specifically ruled upon prior to the trial court’s issuing a judgment. Accordingly, we find no error in the trial court’s granting of Gulf Coast’s exception of res judicata/collateral estoppel.
Assignment of Error No. 9
In his ninth assignment of error, Mr. Baldone contends that the lower court erred in enforcing obligations for sales of fraudulent receivables, when the fraud was known or should have been known to the purchaser and seller at the time of purchases As discussed earlier, the testimony elicited at,.trial established that the payment by wire, transfer -by GMD' was - a normal occurrence and not a. suspicious activity. , Therefore, no Gulf Coast employee should have, been aware of any illegal activity taking place. As such there was no bad faith on their part. See generally N-Y Associates, Inc. v. Board of Comm’rs of Orleans Parish Levee District, 2004-1598, 2004-1986 (La.App. 4 Cir. 2/22/06), 926 So.2d 20. Based on the record before this Court, there was no.evidence that,Gulf Coast was aware or should have been aware of any fraud. Accordingly, we find no merit in Mr. Baldone’s ninth assignment of error.
Assignment of Error No. 10
In his tenth and final assignment of error, Mr. Baldone contends • that the lower court erred in awarding an unreasonably high award of attorney fees to Gulf Coast witho.ut examining the required factors or providing him-with a reasonableness hearing. We agree with Mr. Bal-done’s that the trial court’s award of attorney fees was improper.
Attorney’s fees are based upon the legal work performed or to be performed and must be reasonable. Oak Tree Sav. Bank v. Creighton Const. Co., 556 So.2d 117, 118 (La.App. 4 Cir.1990). This also applies to contingency fee con tracts. Id. In State, Dept. of Transp. and Dev. v. Williamson, 597 So.2d 439 (La. 1992), the Louisiana Supreme Court has set out factors to be considered by a court in determining the reasonableness of an award of attorney’s fees. Those factors include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4).amount of money involved; (5) extent and character *856 of the work performed; (6) legal knowledge, attainment, and skill of the. attorneys; (7) number of appearances; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. Id. at 442.
In the instant case, the trial court stated on at least two occasions during the course of trial that a reasonableness hearing would be held to determine attorney fees, but then simply granted Gulf Coast’s fee request without a hearing or examination of the facts behind the request, such as hours or rates. Therefore, the award of attorney fees was unreasonable and the denial of a hearing was prejudicial to Mr. Baldone.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects with the exception of its awarding of attorney fees. The trial court’s award of attorney fees is vacated and the matter is remanded to the trial court for the limited purpose of holding a contradictory hearing where attorney fees will be established.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.

. Mr. Frederic was the former head of Gulf Coast’s factoring department and Mr. Williams was the president of Gulf Coast.