| | | |
|---|---|---|
| **KUSAI ABDELQADER** | * | **NO. 2022-CA-0305** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **RAMON RAMOS, JR.,** | * | |
| **DELISHA BOYD, LLC,** | | **FOURTH CIRCUIT** |
| **DELISHA YOUNG BOYD, AND** | * | |
| **KRISTEN L. YOUNG-BOYD** | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2019-02461, SECTION "C"
Honorable Veronica E. Henry, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge
Pro Tempore James F. McKay, III)

D. Alex Onstott
Julia Elizabeth Zuckerman
CIOLINO ONSTOTT
400 Poydras Street, Suite 2145
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFF/APPELLEE

John A. E. Davidson
DAVIDSON & DAVIDSON, APLC
5000 W. Esplanade Ave, Suite A, #284
Metairie, LA 70006

Gary M. Carter, Jr.
Dereck J. Rovaris, Jr.
THE CARTER FIRM
2401 Westbend Parkway, Suite 3070
New Orleans, LA 70114

     COUNSEL FOR DEFENDANTS/APPELLANTS

**AMENDED IN PART AND AFFIRMED IN PART AS AMENDED;
VACATED IN PART AND REMANDED;
ANSWER TO APPEAL GRANTED**

**NOVEMBER 30, 2022**

*JCL*

*RLB*

*JFM*

This is a contract case. Defendants/appellants, Ramon Ramos, Jr. and Hacienda Construction of Louisiana, LLC (respectively, "Ramos" and "Hacienda" or collectively, "Seller"), appeal the March 3, 2022 judgment of the First City Court of New Orleans ("city court"). The judgment awarded plaintiff/appellee, Kusai Abdelqader ("Abdelqader" or "Buyer"), stipulated damages, costs, legal interest, and attorney's fees and dismissed Seller's reconventional demand. Buyer answered the appeal seeking additional attorney's fees and costs. For the reasons discussed in this opinion, we amend in part and affirm in part as amended. We also grant the answer to appeal, and we award Buyer additional attorney's fees and costs for work performed on appeal. Further, we vacate in part, and we remand this matter to the city court for a contradictory hearing to determine the amount of Buyer's attorney's fees incurred both before the city court and on appeal.

**FACTS AND PROCEDURAL HISTORY**

This litigation arises from a Louisiana Residential Agreement to Buy or Sell (the "Agreement") concerning a vacant lot on Three Oaks Court in Marrero,

1

Louisiana on which a new home was to be built (the "Property"). The Agreement

is dated November 14, 2018 and reflects electronic signatures of Ramos as the

seller and Abdelqader as the buyer. Despite signing the Agreement as the seller,

Ramos maintains that at all times he acted as agent for Hacienda.[1]

The Agreement contains a financing provision, which required Buyer to

provide Seller with written documentation from a lender that a loan application had

been made, and which conditioned the sale of the Property on the Buyer's ability to

secure financing. On November 6, 2018, prior to entering into the Agreement,

Buyer's Agent, Matthew Davis, provided electronically to Seller's Agent, Kristen

Boyd, various documents from the United States Department of Agriculture Rural

Housing Service ("USDA" or "Lender"), including a certificate of eligibility and

pre-approval letter dated September 21, 2018 (collectively, the "USDA

documents"). These documents reflect that Buyer was eligible for financing in the

amount of $160,000.00.

During construction and before the new home was fully complete, the

USDA required an appraisal of the Property. The appraisal is not a part of the

record, but no dispute exists that the Property appraised for an amount lower than

the sale price. Thus, on February 12, 2019 and February 13, 2019, respectively,

Seller and Buyer executed an Addendum to the Agreement (the "Addendum"),

which in pertinent part, amended the sale price to $160,000.00 with no closing cost

---

[1] The judgment on appeal was rendered against both Ramos and Hacienda. No party has raised the correct identity of the seller, contracting party, or owner of the Property as an issue on appeal. Thus, we do not address in this opinion the identity of the parties against whom judgment was rendered.

assistance, and excluded sod, landscaping, and mirrors from the sale of the Property.

Certain disputes then erupted between the parties, and Seller's Agent provided to Buyer's Agent a Cancellation of Agreement to Buy or Sell (the "Cancellation") bearing electronic signatures of Ramos dated February 13, 2019, and signatures of Seller's Agent and Seller's Broker, Delisha Boyd, dated February 7, 2019. The same day, Seller's Broker sent an email to Wanda Holmes, a representative of Buyer's Lender, stating that "I spoke with the [Seller] [and] we have no interest in selling to this buyer anymore…. Please be advised, if the buyer emails me or calls me I will not respond. If he calls the seller he will meet the real Ramon Ramos." The following day, on February 14, 2019, Seller's Agent sent an email to Salina Pentney Livaccari, a branch manager for Buyer's selected title company, Property Title, Inc., instructing her to "stop contacting me [Seller's Agent] about anything concerning 5900 Three Oaks." In addition, on February 14, 2019, the Property was re-listed for sale.

On March 27, 2019, Buyer filed suit against Seller, Seller's Agent, Seller's Broker, and the listing firm, Delisha Boyd, LLC, alleging breach of the Agreement, refusal to return deposit, tortious interference with contract, and unfair trade practices. Buyer alleged that Seller improperly "back[ed] out" of the Agreement and falsely claimed that proof of a loan application was not timely provided to Seller. Buyer argued that Seller's true motivation to cancel the sale was Buyer's refusal to use Seller's preferred title insurance company, in violation of the

Agreement and the Real Estate Settlement Procedures Act of 1974.[2] In his petition, Buyer sought stipulated damages, attorney's fees, and costs pursuant to the Agreement and return of his deposit. On July 22, 2020, Seller filed a reconventional demand against Buyer. Thereafter, several of Buyer's claims against Seller's Agent, Seller's Broker, and the listing firm were dismissed on an exception of no cause of action, and the remaining claims against said parties were settled prior to trial. On January 11, 2022, trial on Buyer's petition for damages and Seller's reconventional demand went forward. On March 3, 2022, the city court rendered judgment denying Seller's reconventional demand and awarding Buyer $21,333.00, comprised of $16,000.00 in stipulated damages (10% of the $160,000.00 sale price) and $5,333.00 in attorney's fees, as well as legal interest and costs.

## ASSIGNMENTS OF ERROR

Seller brought the instant appeal, raising the following assignments of error:

A.     The Trial Court committed manifest error in finding that the Agreement constituted a valid contract to enforce the sale of immovable property under Louisiana Law.

B.     The Trial Court committed legal error in applying the law related to contract interpretation to the Agreement.

---

[2] The Agreement states that "[t]he Act of Sale is to be executed before a settlement agent or Notary Public to be chosen by the BUYER …" The Real Estate Settlement Procedures Act provides that "[n]o seller of property that will be purchased with the assistance of a federally related mortgage loan shall require directly or indirectly, as a condition to selling the property, that title insurance covering the property be purchased by the buyer from any particular title company." 12 U.S.C. § 2608(a).

C. The Trial Court committed manifest error in finding that Plaintiff had satisfied the financing conditions of the Agreement.

D. The Trial Court committed legal error in determining that the Agreement was not null and void due to the failure of the suspensive condition and awarding damages and attorney's fees.

Buyer timely answered the appeal, seeking additional attorney's fees for work performed at trial and on appeal, along with costs of appeal.[3]

## DISCUSSION

**Existence of a Contract**

Seller's first assignment of error addresses whether the city court erred in finding that a contract existed. Seller argues that the Agreement is void for lack of consent, due to various misunderstandings between the parties.

"The essential elements of a breach of contract claim are the existence of a contract, the party's breach thereof, and resulting damages." *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La. App. 4 Cir. 5/20/15), 165 So.3d 1211, 1216 (citing *Favrot v. Favrot*, 10-0986, pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1108-09). "The party claiming the rights under the contract bears the burden of proof." *Id.* (citing *Favrot*, 10-0986, p. 15, 68 So.3d at 1109).

"The existence or nonexistence of a contract is a question of fact and, accordingly, the determination of the existence of a contract is a finding of fact, not to be disturbed unless clearly wrong." *DePodesta v. Breaux*, 12-1594, p. 6 (La.

---

[3] An appellee who "desires to have the judgment modified, revised, or reversed in part or [] demands damages against the appellant … must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later." La. C.C.P. art. 2133(A). The record reflects a return date of May 16, 2022, and Buyer filed his answer to appeal on May 27, 2022, less than fifteen days later. We reject Seller's argument that the answer to appeal was untimely.

App. 4 Cir. 5/29/13), 116 So.3d 1017, 1021 (citing *Sam Staub Enterprises, Inc. v. Chapital*, 11-1050, p. 5 (La. App. 4 Cir. 3/14/12), 88 So.3d 690, 693). In order to reverse a lower court's findings of fact, "an appellate court must undertake a two-part inquiry: 1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and 2) the court must further determine that the record establishes the finding is clearly wrong." *Rousset v. Smith*, 14-1409, p. 27 (La. App. 4 Cir. 9/23/15), 176 So.3d 632, 648 (citing *Scarberry v. Entergy Corp.*, 13-0214, p. 16 (La. App. 2/19/14), 136 So.3d 194, 207). "Where there is conflict in the testimony, reasonable inferences of fact should not be disturbed on review even if the appellate court would have weighed the evidence differently." *1100 S. Jefferson Davis Parkway, LLC*, 14-1326, p. 3, 165 So.3d at 1215 (citing *Reddoch v. Parish of Plaquemines*, 13-0788, p. 3 (La. App. 4 Cir. 3/26/14), 134 So.3d 683, 685).

"Under Louisiana law, the requirements for a valid contract are capacity, consent, a lawful cause, and a valid object." *Granger v. Christus Health Cent. Louisiana*, 12-1892, p. 33 (La. 6/28/13), 144 So.3d 736, 760-61. This Court has characterized the standard form Louisiana Residential Agreement to Buy or Sell as a "bilateral promise of sale or contract to sell" in which "one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party." *Rousset*, 14-1409, p. 7, 176 So.3d at 638 (quoting La. C.C. art. 2623). "A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it

contemplates." La. C.C. art. 2623. "The thing, the price, and the consent of the parties are requirements for the perfection of a sale." La. C.C. art. 2439.

"Consent is an absolute necessity to the formation of a contract, and where there is no meeting of the minds between the parties the contract is void for lack of consent." *DePodesta*, 12-1594, p. 6, 116 So.3d at 1021 (internal quotation omitted). Seller argues that no meeting of the minds existed as to: (1) the parties' "respective obligations"; (2) the object of the Agreement; and (3) the sale price of the Agreement. Seller fails to explain what "respective obligations" are in dispute, an in the absence of any briefing or explanation of this issue, we are unable to review it. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4).

With regard to object, Seller contends that the description of the Property in the Agreement is insufficient and the parties did not agree on the physical attributes of the new construction home to be built on the vacant lot. We find no merit in either of these arguments. The Agreement describes the Property as follows:

> **PROPERTY DESCRIPTION**: I/We offer and agree to Buy/Sell the property at:
> (Municipal Address) <u>5900 THREE OAKS CT</u>
> City <u>Marrero</u>; Zip <u>70072</u>; Parish <u>Jefferson</u>; Louisiana,
> (Legal Description) <u>As per title</u>
> on lands and grounds measuring approximately <u>As per title</u> or as per record title; including all buildings, structures, component parts, and all installed, built-in, permanently attached improvements, …

The Agreement references a new home construction addendum:

> **NEW HOME CONSTRUCTION**: If the property to be sold is completed new construction, under construction, or to be constructed, check one:

7

✓ A new home construction addendum, with additional terms and conditions, is attached.

☐ There is no new home construction addendum.

We find no support for the proposition that the municipal address of the Property, along with legal description as per its record title, is inadequate to identify the Property that is the object of the sale. While no new home construction addendum is attached to the Agreement of record, we find no law requiring use of the new home construction addendum. Rather, at least one commentator has remarked that the "New Construction Addendum" approved by the Louisiana Real Estate Commission is "suggested but not mandatory." Peter S. Title, *Implied warranties—Warranty against hidden defects—New Home Warranty Act*, 1 La. Prac. Real Est. § 10:108 (2d ed. 2021).

Seller also points to Buyer's trial testimony that, initially, he would not have wanted to buy the Property unless the house had ceramic tile flooring throughout. Ramos' father, Ramon Ramos, Sr., testified on behalf of Hacienda that he received a telephone call from Buyer, in which Buyer stated that he did not want to purchase the Property unless the house had ceramic tile flooring. However, as Buyer explained in his testimony, his Lender advised him, evidently in response to representations by Seller's Broker, that Buyer could choose the flooring and other materials in the house to be constructed. Nevertheless, Buyer testified, once he understood that the house would not have ceramic tile throughout, he still wanted to close on the sale of the Property as quickly as possible due to the upcoming birth

of his child. We find no manifest error in the city court's determination that a meeting of the minds existed as to the Property as the object of the sale.

As to price, the Agreement as executed on November 14, 2018 reflects two different purchase prices:

> **PRICE**: The Property will be sold and purchased subject to title and zoning restrictions, servitudes of record, and law or ordinances affecting the Property for the sum of <u>One Hundred & Fifty Eight Thousand Dollars</u> [] ($165,000) (the "Sale Price").

The Agreement also provides for appraisal:

> **APPRAISAL**: … This sale IS conditioned on the appraisal of the Property being not less than the Sale Price. … If the appraised value is less than the Sale Price, … the BUYER shall have the option to pay the Sale Price agreed upon prior to the appraisal or to void this Agreement unless the SELLER agrees in writing to reduce the Sale Price to the appraised value or all parties agree to a new Sale Price.

No dispute exists that, following the Property's appraisal, Seller and Buyer executed an Addendum, on February 12, 2019 and February 13, 2019, respectively, which amended the sale price to $160,000.00. No evidence of record contradicts this sale price was agreed to as of February 13, 2019. Thus, we cannot say that the lower court was manifestly erroneous in finding a meeting of the minds as to the object and price of the Agreement and in concluding that a contract exists.

**Financing Provision**

We examine together Seller's second and third assignments of error. Seller argues that the city court legally erred in using parol evidence to interpret the terms

of the Agreement and manifestly erred in finding that the USDA documents, which Buyer provided to Seller, complied with the Agreement's financing provision.

"Generally, a contract, subject to interpretation on the four corners of the instrument without the necessity of extrinsic evidence, is interpreted as a matter of law." *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 09-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So.3d 394, 401. Likewise, "the determination of whether a contract is clear or is ambiguous is also a question of law." *Landis Const. Co. v. St. Bernard Parish*, 14-0096, p. 5 (La. App. 4 Cir. 10/22/14), 151 So.3d 959, 963. Appellate courts review questions of law *de novo*. *Id.*

"Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Kirksey*, 09-1433, p. 9, 40 So.3d at 401. "In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable." *French Quarter Realty v. Gambel*, 05-0933, pp. 3-4 (La. App. 4 Cir. 12/28/05), 921 So.2d 1025, 1028.

A contract has the effect of law between the parties, and a court is bound to interpret it according to the common intent of the parties. *See* La. C.C. arts. 1983 and 2045. "If the words of a contract are clear, unambiguous, and lead to no absurd consequences, [a court] may not look beyond the contract language to determine the true intent of the parties." *Rousset*, 14-1409, p. 6, 176 So.3d at 637 (citing La. C.C. art. 2046). "[T]o determine the meaning of words used in a contract, a court

should give them their [generally] prevailing meaning." *Gambel*, 05-0933, p. 7, 921 So.2d at 1029; La. C.C. art 2047. "If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract." *Gambel*, 05-0933, p. 7, 921 So.2d at 1029 (citing La. C.C. art. 2048). "A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective and not with one that renders it ineffective." La. C.C. art. 2049. "Meaning and intent of parties to a written instrument is ordinarily determined from the instrument's four corners and extrinsic evidence is inadmissible either to explain or to contradict the instrument's terms." *Lalla v. Calamar, N.V.*, 08-0952, p. 8 (La. App. 4 Cir. 2/11/09), 5 So.3d 927, 932 (citations omitted).

The Agreement provides for a "Financed Sale" of the Property, which requires Buyer to produce to Seller written documentation regarding a loan as follows:

> ✓ **FINANCED SALE**: This sale is conditioned upon the ability of BUYER to borrow with this Property as security for the loan the sum of $_____ or 100% of the Sale Price by a mortgage loan or loans at an initial interest rate not to exceed 5.95% per annum, interest and principal, amortized over a period of not less than 30 years, payable in monthly installments or on any other terms as may be acceptable to the BUYER provided that these terms do not increase the cost, fees or expenses to the SELLER. The loan shall be secured by:
>
> ✓ Fixed Rate Mortgage …
>
> ✓ Rural Development …
>
> … The BUYER shall supply the SELLER written documentation from a lender that a loan application has

been made and the BUYER has given written authorization to lender to proceed with the loan approval process within 3 calendar days after the date of acceptance of this offer by both parties. If the BUYER fails to make loan application, and to supply SELLER with written documentation of that application and BUYER'S written authorization for lender to proceed with loan process within this period, the SELLER may, at the SELLER'S option, terminate this Agreement, by giving the BUYER written notice of the SELLER'S termination. In the event the BUYER is not able to secure financing, the SELLER reserves the right to provide all or part of mortgage loan(s) under the terms set forth above.

Buyer introduced evidence that on November 6, 2018, prior to executing the Agreement, Buyer's Agent provided Seller's Agent with a copy of the USDA documents: a pre-approval letter and certificate of eligibility, both dated September 21, 2018, by Wanda Holmes on behalf of the USDA Rural Housing Service. The pre-approval letter states, in relevant part:

Dear [Buyer]:

You have been determined eligible for Rural Development financing for the purchase of a modest single family home. Eligibility is based on your current income and financial condition. This information must be recertified every 90 days. **Loan approval and closing are subject to your continued eligibility** and the availability of loan funds…. Your Certificate of eligibility will expire **January 4, 2019**.

If you purchase a home with a Rural Development loan of $160,000 your **estimated monthly subsidize[d] payment for 38 years** will be ($421.90) with **estimated** escrow ($217.42) totaling $639.32 **estimated**.
…

(Emphasis in original).

The Certificate of Eligibility states, in pertinent part, that:

12

> [Buyer] has been determined eligible for Rural Housing Service (RHS) financing for the purchase of a modest single family home….

> RHS has determined that the applicant qualifies for a loan to purchase a home in Jefferson [Parish], up to the amount of $160,000.00 based on a down payment amount of $0 estimated real estate taxes of $905.04 and insurance of $1,704.00.

Seller contends that the city court legally erred by relying on parol evidence – the testimony of Buyer's real estate broker, Amanda Miller ("Miller") – to interpret the terms of the Agreement. We find this argument without merit. The city court stated in its reasons for judgment,[4] "[a]ccording to witness Amanda Miller, Plaintiff's real estate agent and a realtor in the business for over 20 years, the pre-approval letter submitted was typical of what is provided to a seller for a USDA loan in Louisiana." Miller testified at trial regarding the facts of her participation in this transaction, her review of electronic and software documentation by Seller's Agent whom she supervised, and her experience with USDA Rural Development home loans in the course of other real estate transactions for other clients. In Miller's experience, lenders do not provide a copy of a buyer's loan application to a seller because it contains confidential financial information. Instead, when Miller requests proof of a loan application from a lender, in response she usually receives either an email confirming that a loan application has been made or a certificate of eligibility like the one in evidence.

---

[4] "Our jurisprudence is well-settled that an appeal is taken from a final judgment and not the [lower] court's reasons for judgment; however, an appellate court may consider the reasons for judgment in determining whether the [lower] court committed legal error." *Roy Anderson Corp. v. 225 Baronne Complex, L.L.C.*, 17-1005, p. 6 (La. App. 4 Cir. 7/11/18), 251 So.3d 493, 499 (citing *Winfield v. Dih*, 01-1357, p. 8 (La. App. 4 Cir. 4/24/02), 816 So.2d 942, 948).

The pre-approval letter and certificate of eligibility are the types of documents that Miller would provide to a seller, pursuant to the financing provision, to prove that the buyer had made a loan application.

We find that testimony, which details the documentation that a buyer's real estate agent submitted to seller's real estate agent, is appropriate to resolve the fact issue of whether a buyer complied with a financing provision. Moreover, to the extent that Miller provided any opinion testimony about real estate sales industry standards or practices, Seller failed to object to same at trial and has waived any right to raise such issues on appeal.[5]

Notwithstanding Miller's testimony, we undertake a *de novo* review of the financing provision at issue. Buyer was required to provide Seller with: (1) written documentation; (2) from a lender; (3) that a loan application has been made; and (4) that Buyer authorized lender to proceed with the loan approval process. The written documentation was due from Buyer to Seller "within 3 calendar days after" the date of Agreement.

Seller contends that the city court erred in finding that Buyer satisfied the financing provision. Seller raises several purported deficiencies in Buyer's performance under the financing provision, specifically:

- The loan application was not produced to Seller;

- The loan application was not dated within the 3-day window after the Agreement was signed;

---

[5] During Miller's testimony, Seller objected to a single question, whether the lack of a new home construction addendum rendered the Agreement invalid, which the city court overruled but which is not assigned as error in this appeal. Otherwise, Seller did not object at trial to this line of questioning, even though Miller was never tendered as an expert witness.

- The pre-approval letter and certificate of eligibility did not prove that a loan application was made or that Buyer directed the lender to proceed with loan approval;

- The pre-approval letter and certificate of eligibility were not dated within the 3-day window after the Agreement was signed;

- The certificate of eligibility expired on January 21, 2019, after the Agreement was signed but before the Cancellation;

- The Property is not identified in the pre-approval letter or certificate of eligibility; and

- No "certified plans, specifications, and cost estimates" for the Property are contained in the record.

Seller argues that the financing provision is unambiguous, and we agree. However, we do not find Seller's interpretation of the financing provision a reasonable one under the clear language of the Agreement. As to the content of the documents due from Buyer to Seller, nothing in the Agreement requires Buyer to produce his loan application to Seller or that said loan application must be dated within 3 days of the Agreement. The financing provision does not require that the USDA documents describe the Property or its location or that Buyer must furnish Seller with Seller's own plans for the Property's construction. Moreover, to the extent that that the certificate of eligibility (in effect at the time submitted to Seller) contains an expiration date after which the Buyer must be recertified by his Lender, nothing in the Agreement requires that Buyer provide the recertification to Seller. Moreover, no evidence exists that the USDA's requirements – that Buyer provide certain documentation to USDA – became a part of the Agreement such that Buyer must then provide that same documentation to Seller.

As to the timing of Buyer's submission of the USDA documents to Seller, the Agreement required Buyer to provide the written documentation to Seller "within 3 calendar days after" the date of Agreement. Applying the rules of contractual interpretation set forth in our Civil Code, using the prevailing meaning of this phrase, and seeking to render the phrase effective rather than ineffective, we find that the financing provision required Buyer to provide the written documentation to Seller **no later than** 3 calendar days after the date of the Agreement. It is undisputed that by the time of the Agreement, Buyer had already provided Seller, though their respective real estate agents, with documentation that Buyer was eligible for a USDA home loan. Proof of a financing application dated before the Agreement and furnished to Seller before the Agreement complies with this provision, and finding otherwise would lead to absurd consequences. The city court reasonably inferred from the pre-approval letter and certificate of eligibility that Lender produced these documents in response to Buyer's application for financing and pursuant to Buyer's direction to proceed with the loan process. We find no merit in these assignments of error.

**Suspensive Condition**

In his fourth assignment of error, Seller argues that the award of damages, attorney's fees, and costs is legally erroneous because the suspensive condition of financing was never met and the Agreement is null. The Agreement stipulates the Buyer's remedies, in the event of Seller default, as follows:

> <u>**DEFAULT OF AGREEMENT BY THE SELLER**</u>: In the event of any default of this Agreement by the

SELLER, the BUYER shall at the BUYER'S option have the right to declare this Agreement null and void with no further demand, or to demand and/or sue for any of the following:

1) Termination of this Agreement; 2) Specific performance; 3) Termination of this Agreement and an amount equal to 10% of the Sale Price as stipulated damages.

Further, the BUYER shall be entitled to the return of the Deposit. The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs. The SELLER may also be liable for Broker fees.

According to Seller, Buyer cannot enforce these remedies without having obtained financing. Seller cites to three cases recognizing that a contract to purchase immovable property, which is conditioned on a buyer's ability to secure financing, is a contract subject to a suspensive condition, and the contract does not become effective until the condition occurs. *See Rousset*, 14-1409, pp. 9-10, 176 So.3d at 639; *Louisiana Real Est. Comm'n v. Blakes*, 04-216, p. 7 (La. App. 5 Cir. 7/27/04), 880 So.2d 79, 83; *Bacon v. Ford*, 522 So.2d 1232, 1234 (La. App. 4th Cir. 1988). Under the Louisiana Civil Code, "[a] conditional obligation is one dependent on an uncertain event." La. C.C. art. 1767. "If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." *Id.* Even so, "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." La. C.C. art. 1772.

The cited case law characterizes **obtaining financing** as an uncertain event under a real estate buy-sell agreement. However, the financing provision in dispute on appeal involves a much different issue. Seller claims he was entitled to cancel

the Agreement because Buyer failed to supply written proof that he **applied for financing**. As discussed above, the Agreement required that Buyer supply Seller with "written documentation from a lender that a loan application has been made…" The city court made a factual finding that Buyer timely provided Seller with written proof that Buyer applied for financing, as required by the Agreement. We find no manifest error in this finding of fact. The city court did not reach whether Buyer later **obtained** financing, and it was unnecessary for the city court to do so, based on its conclusion that Seller anticipatorily breached the Agreement shortly after executing the Addendum. We find no merit in Seller's argument.

**Answer to Appeal**

Lastly, in his answer to appeal, Buyer seeks: (1) an increase to attorney's fees for work done in the lower court; (2) additional attorney's fees for work performed on appeal; and (3) costs of appeal. We find merit in Buyer's arguments.

In Louisiana, the prevailing party may only recover attorney's fees where authorized by contract or statute. *Borgnemouth Realty Co. v. Parish of St. Bernard*, 13-1651, p. 17 (La. App. 4 Cir. 5/21/14), 141 So.3d 891, 902. "Attorney's fees are based upon the legal work performed or to be performed and must be reasonable." *Gulf Coast Bank & Tr. Co. v. Casse*, 15-0657, p. 15 (La. App. 4 Cir. 4/27/16), 192 So.3d 845, 855. To determine the reasonableness of an award of attorney's fees, the Louisiana Supreme Court has set forth the following factors for courts to consider:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount

of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*Borgnemouth Realty Co.*, 13-1651, p. 17, 141 So.3d at 903 (citing *State, Dept. of Transp. and Dev. v. Williamson*, 597 So.2d 439, 442 (La. 1992)). An award of attorney's fees is subject to review on appeal for an abuse of discretion. *1100 S. Jefferson Davis Parkway, LLC*, 14-1326, p. 1, 165 So.3d at 1220.

In the matter on appeal, attorney's fees and costs were stipulated remedies set forth in the Agreement in the event of Seller default, which stated, in part:

**<u>DEFAULT OF AGREEMENT BY THE SELLER</u>**:
…
The prevailing party to any litigation brought to enforce any provision of this Agreement shall be awarded their attorney fees and costs….

Buyer claims to have incurred $41,232.60 in attorney's fees and costs, but he was awarded only $5,333.00 in attorney's fees at trial. The Agreement requires that Buyer, as prevailing party, shall be awarded his attorney's fees and costs. The city court properly found that Buyer was entitled to attorney's fees and costs, and we uphold the portion of the judgment that found Buyer entitled to an award of attorney's fees and costs. Nevertheless, we cannot discern from the record what factors, if any, the city court considered in arriving at the amount of its attorney fee award. As such, to the extent that the city court set the amount of attorney's fees at $5,333.00, we vacate said amount and remand this matter to the city court for the limited purpose of conducting a reasonableness hearing to establish the amount of attorney's fees. *See, e.g., Casse*, 15-0657, p. 16, 192 So.3d at 856; *Danos Tree*

*Serv., LLC v. Proride Trailers, LLC*, 17-1546, pp. 9-10 (La. App. 1 Cir. 7/10/18), 255 So.3d 1078, 1085.[6]

As to work done defending against this appeal, we acknowledge that appeals are favored, and we cannot say that Seller's arguments are unquestionably frivolous. *See 1100 S. Jefferson Davis Parkway, LLC*, 14-1326, p. 12, 165 So.3d at 1220; La. C.C.P. art. 2164.[7] Nevertheless, a general rule exists – in cases where attorney's fees were awarded by the trial court, the appeal has necessitated additional work on the part of plaintiff's counsel, and the defendant has obtained no relief on appeal – that an award of attorney's fees for the defense of an appeal is merited. *Motton v. Lockheed Martin Corp.*, 03-0962 (La. App. 4 Cir. 3/2/05), 900 So.2d 901, 919, *on reh'g* (Apr. 6, 2005), *writ denied*, 05-0996 (La. 6/17/05), 904 So.2d 704; *Quinlan v. Sugar-Gold*, 53,348, pp. 7-8 (La. App. 2 Cir. 3/11/20), 293 So.3d 722, 729. "It is within the appellate court's discretion to award or increase attorney fees for appellate work." *Quinlan*, 53,348, p. 8, 293 So.3d at 729. Considering the mandatory attorney's fees and costs to the prevailing party under the Agreement, we award Buyer additional attorney's fees for work performed on appeal. As a full record reflecting said fees is not before this Court, we further instruct the city court to hold a contradictory hearing to determine the amount of

---

[6] While we acknowledge the jurisdictional limits of the city court pursuant to La. C.C.P. art. 4843(E), we also recognize that under La. C.C.P. art. 4841(B) the "amount in dispute … does not include interest, court costs, attorney fees, or penalties, whether provided by agreement or by law."

[7] "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable." La. C.C.P. art. 2164.

attorney's fees for work done on appeal. We likewise award Buyer all costs of this appeal. *See generally* La. C.C.P. art. 2164.

Finally, we do not disturb the amount of stipulated damages awarded pursuant to the Agreement. However, as the city court's award of $21,333.00 included $5,333.00 in attorney's fees, we amend that portion of the judgment to reflect that Buyer is awarded $16,000.00 in stipulated damages, plus legal interest from the date of judicial demand and all costs of this proceeding, as well as a reasonable attorney's fee to be determined by the city court in further proceedings consistent with this opinion.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, the judgment of the city court is amended in part and affirmed in part as amended. The answer to appeal is granted, and Buyer is awarded costs of this appeal and attorney's fees for work performed on appeal. To the extent that the city court set the amount of attorney's fees at $5,333.00, that amount is vacated, and this matter is remanded to the city court to hold a contradictory hearing to determine a reasonable attorney's fee for work performed before the lower court and on appeal, and for further proceedings consistent with this opinion.

**AMENDED IN PART AND AFFIRMED IN PART AS AMENDED;**
**VACATED IN PART AND REMANDED;**
**ANSWER TO APPEAL GRANTED**